### GRISWOLD and another *against* PITCAIRN.

*New-Haven,*
November,
1816.

THIS was an action of *assumpsit.* The declaration stated, that from the 6th of *September,* 1809, until the 15th of *October,* 1810, the plaintiffs were sole owners of the ship *Ann,* of *New-York,* whereof *Hezekiah Smith* was master, appointed by the plaintiffs, and their agent ; and that on the 6th of *September,* 1809, at *Hamburgh,* said ship then lying at *Tonningen,* the plaintiffs, by their said agent and master of said ship, entered into a charter-party with *James Neville* and others. The charter-party was recited in the declaration, and was between *James Neville* and others, of the one part, freighters, and *Hezekiah Smith,* master of the *Ann* of *New-York,* of the other part, letter, for a voyage from *Tonningen,* in ballast, to *Riga,* thence to *Belfast,* or, on further orders, to *Liverpool* or *Dublin.* Then followed the several undertakings of the parties. The declaration, after reciting the charter-party, stated, that *Neville* being a stranger to them, it was then and there agreed, that *Pitcairn,* the defendant, should guaranty the fulfilment of the charter-party, on the part of *Neville,* and thereupon, by a writing under his hand, bearing date the 7th of *September,* 1809, *Pitcairn* did " guaranty to capt. *Hezekiah Smith,* of the ship *Ann,* of *New-York,* the sum of fourteen hundred guineas, on the event of his charterer, Mr. *James Neville,* not loading his ship at *Riga,* and according to the terms of the charter-party made between them." The declaration then averred, that it was well known to the defendant and to *Neville,* that the *Ann* belonged to the plaintiffs ; that said contract was made with said *Smith,* as master of their ship, for their benefit, and in the regular course of employment of said ship ; and that the defendant, by said contract, promised to guaranty to them, through their said captain, and to pay to them said sum of fourteen hundred guineas, or their value, in the event of said

The public seal of a sovereign state, affixed to a writing purporting to be a judicial proceeding, is, of itself, the highest evidence of authenticity and is taken notice of judicially, by the courts of justice in other states.
Nor is it necessary, in order to make a document thus authenticated in a foreign nation, a legal exemplification in our courts, that it should be accompanied with a certificate of its being a copy of an original record, under the official signature of an officer of the court, whose judgment is exemplified.
To an action of *assumpsit* against the owner of a ship, on a guaranty given by him to *S.,* the plaintiffs' agent, for the performance of certain stipulations on the part of *N.* in a charter-party, the defendant pleaded, that the plaintiff, by his agent *S.,* brought an action on the charter-party against *N.* for non-performance, before a foreign court of competent jurisdiction, which was decided in *N.'s* favour. To prove his plea, the defendant produced the record of a judgment in an action brought by *D.* as the agent of *S.* against *N.* for non-performance of the charter-party in question, which was decided in *N.'s* favour. Held, that this was proper and sufficient evidence to support the plea.
A foreign judgment, when used by way of *defence,* is as conclusive, to every intent, as a domestic judgment.

*New-Haven,*
November,
1816.

Griswold
*v.*
Pitcairn.

*Neville's* not loading said ship according to said charter-party. The declaration then enumerated, and averred performance of, by *Smith,* the several acts required of him by the charter-party, and alleged, that *Neville,* and his correspondents at *Riga,* wholly neglected and refused to furnish said cargo, or any part thereof; of all which the defendant had received due notice.

The defendant pleaded, 1st, The general issue. 2ndly, That although he executed the written guaranty, &c. yet afterwards, on the 17th of *April,* 1812, at *Copenhagen,* in the kingdom of *Denmark,* the plaintiffs, by their said agent, *Hezekiah Smith,* instituted and prosecuted to judgment, a suit against the said *Neville,* in the sea court, so called, demanding of him the sum of 1400 guineas, for alleged violations of his several engagements and obligations, contained in said charter-party; and that by the judgment of said court, said *Neville* was acquitted, and decreed not to be liable on said charter-party, or any part thereof; that upon the appeal of the plaintiffs, by their said agent, to the supreme court of *Copenhagen,* the judgment of the sea court was affirmed; that the defendant was only surety of said *Neville's* ability and good faith, in the particulars stated in said writing by him executed; and that by said judgment, the liability of said *Neville,* in the particulars for which the defendant was surety, was expressly decided by said court.

The replication traversed the plea in bar, upon which issue was joined.

The cause was tried at *New-London, September* term, 1816, before *Edmond, Brainard* and *Gould,* Js. Several questions of law arose at the trial, under the first issue, which were reserved, but were not, eventually, decided by this court.

To support the plea in bar, the defendant offered in evidence the record of a judgment, or decree, of the supreme court of *Copenhagen,* reciting the proceedings and sentence of the sea court. From the recital, it appeared, that the suit in the sea court, was in the name of "*George Dickenson,* master of a vessel, citizen of the *United States* of *America,* and agent of capt. *Hezekiah Smith* of *Chatham* in the said *States,* against *James Neville,* (by the name of *Henry Myer*). The proceedings of the sea court stated *Smith's* claim of 1400 guineas from *Neville,* for alleged violations of the charter-party, the principal stipulations of which were recited; and

noticed the allegations made, and referred to the proofs adduced, by the parties. After declaring, that capt. *Smith* had not, on his part, complied with the stipulations of the charter-party, the court proceeds to say, that " the defect in the accomplishment of the charter-party on the side of the captain, must, in our judgment, have rendered him incapable of claiming the accomplishment thereof on the side of the defendant." Whereupon it is " decreed, that the defendant shall be acquitted of capt. *George Dickenson*, agent of capt. *Hezekiah Smith*, his prosecution in this case." After reciting the proceedings and decree of the sea court, and after stating that the parties were again heard, the supreme court of *Copenhagen* proceeds to affirm the decree of the sea court. The record was authenticated by the great seal of *Denmark*. There was no certificate that the decree, &c. offered in evidence, was a copy of record, but below the seal was the signature *Colbiornsen*, without any addition of his official character. The translator of the record, deposed, that he knew the seal attached to the original to be the royal seal of the kingdom of *Denmark*. *J. M. Forbes*, Esq. agent of the *United States* at *Copenhagen*, certified, that the signature at the foot of the record was that of the counsellor of conferences, *Colbiornsen*, chief judge of the highest court. To the admission of this record the plaintiffs objected, on several grounds ; but the court overruled such objections, and permitted the record to be read in evidence to the jury. The court also instructed the jury, that if they should find the document shewn in evidence of the proceedings in the court of *Denmark* to be genuine,—and it was to be presumed to be genuine until the contrary was shewn,—their verdict upon the second issue should be for the defendant. The jury having found a verdict for the defendant on both issues, the plaintiffs moved for a new trial ; and the questions arising on such motion were reserved for the consideration and advice of the nine Judges.

The case was very fully discussed, by *Daggett* and *Cleaveland*, in support of the motion ; and by *Law* and *Brainard*, contra.

The former contended, among other points, which, from the decision of the court, it has become unnecessary to state,

New-Haven,
November,
1816.

Griswold
v.
Pitcairn.

1. That the writing given in evidence as the record of a court in *Denmark*, was not properly authenticated as a *genuine* document. *Moises* v. *Thornton*, 8 *Term Rep.* 303. *Henry* v. *Adey*, 3 *East* 221.

2. That admitting the document to be genuine, yet it was not a *legal exemplification.* It does not purport to be a copy of an original record; nor does it appear from extrinsic evidence, that it was so. 2 *Cranch* 237, 8. 8 *Term Rep.* 307, 8. It is signed by an individual, without any addition to shew that he was an officer of the court, or if he was, that he was then acting in his official capacity. Nor does it appear, by whom, or by what authority, the seal was affixed.

3. That the record, if duly authenticated, did not prove the plea; and therefore, the charge was wrong. First, it was not between the same parties. *Peake's Ev.* 33.  4 *Day's Ca.* 432. Secondly, it did not decide the point in issue in this case. *Manny* v. *Harris*, 2 *Johns. Rep.* 24. 30. *Sintzenick* v. *Lucas*, 1 *Esp. Rep.* 44. Thirdly, being a *foreign* judgment, it was not *conclusive.*

On the other side, it was insisted, 1. That the record of the *Danish* court being authenticated under the *national seal,* was proved by the highest evidence which could be given. The affixing of a national seal to an instrument, is symbolical language, importing absolute verity, which the courts of other nations judicially take notice of, and give credit to. *Swift's Ev.* 8. *Peake's Ev.* 73. *n.* (*q.*) 4 *Dall.* 416.

2. That the charge was right, because the parties were virtually the same; the same facts which are now in controversy, were the basis of the former decision; and as that decision was in favour of the defendant, it furnishes a complete defence in this suit. 2 *Mac Nal. Ev.* 427, 8. *Swift's Ev.* 9, 10. *Calhoun's* lessee v. *Dunning,* 4 *Dall.* 120, 1. 2 *H. Black.* 410.

Swift, Ch. J. In this action, the plaintiffs allege, that *Hezekiah Smith*, their agent, made a contract of charter-party with *Neville*, which was guaranteed by the defendant. The defendant has pleaded *non assumpsit*, and also, that the plaintiffs, by their agent, said *Smith*, brought an action on the charter-party, against *Neville*, for the non-performance of it, before a court of competent jurisdiction, in the king-

dom of *Denmark*, which was decided against them. The defendant produced in evidence, the record of the judgment; which the superior court admitted, and decided to be sufficient evidence to prove the issue.

It is contended for the plaintiffs, that this record ought not to have been admitted in evidence, because it is not duly authenticated, and does not appear to have been certified by any officer having power to do it. But this court does not know the form of making up, attesting or certifying their record. If it appear to be a judicial proceeding under the great seal, it is to be presumed, that all the formalities required by their law, have been complied with. This appears to be the record of a judgment rendered in a court of the kingdom of *Denmark*, under the great seal of the king. This seal proves itself, and the court is bound to take judicial notice of it. This is all the evidence required by our law to prove a foreign judgment, and the record was properly admitted.

It has been urged, that this record does not prove that *Smith* was the agent of the plaintiffs, and *Dickenson* the agent of *Smith*, which was a material part of the plea, and was traversed. But the plaintiffs have alleged in their declaration, that *Smith* was their agent, in making the contract of charter-party with *Neville*, which rendered it unnecessary to prove it. Nor was it requisite to prove a power of agency from *Smith* to *Dickenson*, to prosecute the suit. The record of the process and judgment, in a suit in the name of *Smith*, the acknowledged agent of the plaintiffs, by his agent *Dickenson*, was sufficient; and it was no more necessary to prove a power of agency from *Smith* to *Dickenson*, than it would be to prove a lawful power to the attorney of record, in every case, where the proceedings may be given in evidence.

It is further said, that from the record of the court in *Denmark*, it does not appear that the action was on the charter-party, for the guaranty of which this action is brought; and therefore, the record did not prove the facts in issue. But on inspecting the record, it appears that the action in the court in *Denmark* was brought by *Smith*, in his own name, who had lawful power to do it, on this charter-party, against *Neville*; and it was decided, on the merits of the case, that *Smith* had no right to recover; of course, the

*New-Haven,*
November,
1816.

Griswold
*v.*
Pitcairn.

record of that judgment proved the facts in issue, and the charge of the court was correct.

As the verdict was right on the second plea, it is unnecessary to examine the questions arising under the first plea.

I would not advise a new trial.

GOULD, J. If the verdict is right, upon either of the issues, the motion cannot prevail : and, as the court is unanimous in favour of the defendant, upon the second plea ; there is no necessity of considering the questions, raised under the first. The only points, then, which require consideration, are those, which arise upon the admissibility of the record of the *Danish* court, and upon the directions, given to the jury, as to the effect of it.

It is first objected, that the record in question is not duly authenticated,—*i. e.* not accompanied with sufficient evidence of its being genuine. But, in the proof of foreign documents, there must, from the nature and necessity of the case, be some ultimate limit, beyond which no solemnity of authentication can be required. And the public *national* seal of a kingdom, or sovereign state, is, by the common consent and usage of civilized communities, the highest evidence, and the most solemn sanction, of authenticity, in relation to proceedings, either diplomatic or judicial, that is known in the intercourse of nations ; and as such, is taken notice of, judicially, by courts of justice in other states. *Anon.* 9 *Mod.* 66. *The United States* v. *Johns,* 4 *Dall.* 416. *Peake's Ev.* 73. *notis. Church* v. *Hubbart,* 2 *Cranch,* 187. The seals of foreign *municipal courts,* on the contrary, must be proved by extrinsic evidence. *Gilb. L. Ev.* 20. *Henry* v. *Adey,* 3 *East,* 221. *Collins* v. Lord *Mathew,* 5 *East,* 473. *Delafield* v. *Hand,* 3 *Johns. Rep.* 310. *Peake's Ev.* 72, 3. In the present case, the proof of the genuineness of the record, given in evidence, is, in point of solemnity, the highest possible, the *national* seal of the kingdom of *Denmark.* And, as if the production of the seal were not, of itself, sufficient ; its genuineness has been proved by evidence *aliunde,* to which there was no objection.

It is still objected, that there is no certificate of the document's being a *copy* of any original ; and that there is no official *signature* of any clerk, or prothonotary. There can

be no need of either. We surely cannot require, that the mere artificial forms of certifying, or exemplifying, records in foreign courts, should correspond, precisely, with our own. Upon that principle, no foreign record could, perhaps, ever be proved in our courts. But what seems decisive of the question, is, that such a certificate, and signature, if supplied, would not prove the seal, nor conduce to prove it. 3 *East*, 221. The seal, it is true, would prove them; but it proves, of itself, and as well without, as with, them, all that is substantially necessary—the genuineness of the record.

But there is no evidence, it is said, that the seal was affixed by a proper officer. Assuming the seal to be genuine, that fact must, of course, be presumed, unless the contrary is shown. For any higher evidence of the fact, appearing upon the face of the record, than the seal itself imports, is impossible: and to require extrinsic evidence of it, would be to subvert the rule itself, that a national seal is the highest proof of authenticity.

But there is a variance, it is said, between the *Danish* record, and the description of it, in the plea: inasmuch as the plea alleges, that the *plaintiffs*, by their agent *Smith*, commenced the suit against *Neville*; whereas the record itself purports, that *Smith*, as *principal*, brought the suit in his own name, by *his* agent *Dickenson*. Now, ship-masters, like many other mercantile agents, may maintain suits, in their own names, upon charter-parties, and many other contracts entered into by themselves, in behalf of their owners. In such suits, the agent is always, nominally, the principal; though, actually, the mere representative of his employers. Such was the case, in the suit, instituted by *Smith*, in *Denmark*. For the purpose of that action, as claiming against *Neville*, the then defendant, and as between himself, and *Dickenson*, his attorney,—he was principal: though, as to the present plaintiffs, (as appears by their own showing, and even by their declaration, taken in connexion with the *Danish* record,) he was only an agent. A formal, unessential diversity, in the *description*, given to *Smith*, in the two suits, can be of no importance, if it appears, as in this case it clearly does, that he brought the action in *Denmark*, as the representative of the plaintiffs, and that *Dickenson* was merely his attorney. In this view of the case, the judgment in favour of *Neville*, was, in effect, a judgment against the plaintiffs.

*New-Haven,*
November.
1816.

Griswold
*v.*
Pitcairn.

New-Haven,
November,
1816.

The objection, that the record of the *Danish* court was irrelevant, as not embracing the same original questions, as the present suit involves, appears equally unfounded. For the final judgment, in the supreme court of *Denmark*, is most general,—comprehending every question of merits that has arisen, or can, probably, arise, upon the charter-party.

The *Danish* record, then, was clearly admissible : and if so, I am at a loss to discover how the direction to the jury could have been substantially otherwise than it was ; except, indeed, that, in relation to the genuineness of the seal, it was somewhat more qualified in favour of the plaintiffs, than it might have been. There seems to be no ground of objection on their part. For the record goes, directly, to support the plea ; and it is an established rule, that a foreign judgment, when used by way of *defence*, is as conclusive, to every intent, as those of our own courts. The question, whether the *Danish* judgment is to be considered as *res inter alios*, and therefore as not affecting the present suit, does not, according to the view I have now taken of the case, arise upon this motion. For if, as I have attempted to show, the suit in *Denmark* was virtually between the *plaintiffs* and *Neville*, so as to support the averment of that fact in the special plea ; the question, whether it is conclusive between the plaintiffs, and *Pitcairn, the present defendant*, is not involved in the direction of the court, nor affected by the verdict. That point, (if it be one,) remains open upon the face of the pleadings, and can be made only by motion in arrest of judgment, or writ of error.

The other Judges concurred, except GODDARD, J. who declined acting, having been of counsel in the cause.

New trial not to be granted.