## WATSON & a. *v.* WALKER & a.

Wherever the fact upon which the liability of a party arises, lies peculiarly within the knowledge and privity of the plaintiff, notice thereof must be alleged in the pleading, to have been given to the defendant. But where the matter lies as much within the cognizance of the one party, as the other, notice need not be given or stated.

Where the plaintiffs covenanted that they would send an agent to Europe, to make sale of a certain patent-right, sold to them by the defendants for $1000, and the defendants covenanted on their part, that if, upon reasonable exertions, sales should not be effected, they would repay to the plaintiffs, the $1000, or convey to them one-half the right in the United States, — *held*, that it was incumbent on the plaintiffs, to give notice to the defendants that they had failed to effect sales, before an action could be sustained for the recovery of the $1000. *Held*, also, that upon notice being given, the obligation of the defendants was complete to repay the money or convey the right, and that no special request therefor, was necessary.

Where an obligation to pay is complete, a cause of action at once arises, and no formal demand is necessary.

Where notice before suit is necessary, but a special demand unnecessary, and a plea alleges that notice was *not* given, and a demand *not* made, that part of the plea stating that a demand was not made, is superfluous, and may, upon general demurrer, be rejected as surplusage.

When notice is necessary to be given, before suit brought, and the contract upon which it is founded is entered into by two jointly, it is sufficient, on general demurrer, if the plea allege that notice was not given to *them*. It is not necessary that it should also allege that it was not given to *either* of them. *Aliter*, if the contract were joint and *several*.

A memorandum of transactions reduced to writing immediately after the occurrence of the events it recites, may be admitted in evidence, in connection with the testimony of the witness showing the transaction, if the witness shall testify, that he had no doubt the facts stated in the memorandum were true, and that he should have sworn to them from recollection a short time afterwards.

Whether a copy of such memorandum may be used, if the witness swear that at the time he made the copy, he recollected the facts therein stated, *quære?* Quære, also, whether a copy, made three years after the original, could be used, even if the witness testify, that at the time he made the copy, he remembered the facts therein stated, and knew them to be true.

The written or statute laws of foreign governments must be verified in the same manner as foreign judgments, by the exemplification of a copy under the great seal of State, or by a sworn copy. Unwritten laws may be shown by

Watson *v.* Walker.

parol evidence. But witnesses, to be competent to prove unwritten laws, must be *instructed* in them.

The national flag and seal are recognized by all nations. The national seal affixed to the exemplification of a law or judicial proceeding, proves itself.

If papers that are passed to the jury are written upon and underscored, by a party or his counsel, for the purpose of attracting special attention, without the knowledge of the opposing party or the court, the verdict will be set aside on that account. But where the matter is known to the opposing counsel, and is not brought to the notice of the court till after the verdict has been returned, it will then be too late to take the exception.

COVENANT BROKEN. The declaration alleged, in substance, that by a certain deed, made at Dover, on the nineteenth day of August, 1840, between Walker and McIntire, the defendants, on the one part, and Watson and Austin, the plaintiffs, on the other, after therein reciting, that Walker had invented a certain improvement, in a rotary power stocking-loom, for which he had obtained letters patent of the United States, bearing date the fifth day of December, 1839, and had sold McIntire one undivided half part of the same, Walker and McIntire for the consideration of one thousand dollars, paid by Austin and Watson, and of the agreements of Austin and Watson, in the deed written and hereafter mentioned, assigned, set over and sold to Watson and Austin, all the right, title, and interest of Walker and McIntire, in the invention and patent, for, to, and in all parts of the world, without the limits of the United States, and one of the looms perfect and complete. And Walker and McIntire further agreed and promised, thereafterwards to furnish Watson and Austin, at the cost thereof, such other of said looms, as models and specimens, as might be necessary to enable them advantageously to exhibit the invention, and sell and dispose of the same. And Watson and Austin, agreed and engaged, as soon as practicable and convenient, to send an agent to Europe, for the purpose of exhibiting the invention, and of selling and disposing of the looms, and the right of making, using and vending the same, and that they and their agent should make all suitable and proper efforts to do the same to the best advantage and that whenever they should have sold and disposed of the right to the amount of twenty-five hundred dollars, they should

and would pay to Walker and McIntire, the further sum of fifteen hundred dollars.

And Walker and McIntire, further agreed and promised, that in case, after using all proper and reasonable exertions to sell such right and privilege in Europe, Watson and Austin, or their agent, should not be able to effect such sales, to the amount of the sum of one thousand dollars, and all the expenses of such agency, they, Walker and McIntire, would repay to Austin and Watson the one thousand dollars, and all the reasonable expenses of the agency, or convey and assure to Watson and Austin, the full undivided half of the patent-right within the United States; and the plaintiffs in fact say, that as soon as practicable and convenient, and within a reasonable time after the signing and sealing of the deed, to wit: on the first day of October, then next following, they did send an agent to Europe, in pursuance of their agreement, and engagement aforesaid,' and although all suitable and proper 'efforts were made by their agent in Europe to sell the looms, and the right of making, using and vending the same, neither the plaintiffs nor their agent were able to effect such sales to the amount of one thousand dollars, or for any other sum, and in prosecuting the agency, they necessarily incurred great 'expenses, and paid, and laid out a large sum of money, to wit: the sum of three thousand dollars, of all which said McIntire and Walker, thereafterwards, to wit: at said Dover, on the first day of June, 1841, had notice. And although the plaintiffs have always from the time of making the deed, hitherto, well and truly kept, performed and fulfilled, all things therein mentioned and contained, on their part to be kept, fulfilled and performed, according to the tenor, effect and meaning thereof, the plaintiffs say, that McIntire and Walker have not re-paid to them the said sum of one thousand dollars, and the reasonable expenses of the agency, aforesaid, nor any part thereof, nor conveyed and assigned to them, the one undivided half part of the patent right within the United States, though requested so to do, but neglect and refuse so to do, and so the plaintiffs say, the said McIntire and Walker have not kept their covenants aforesaid, but have broken the same.

To this declaration the defendants pleaded five pleas. The first was the general issue. The second and third set forth, in substance, that the action ought not to be maintained, because Austin and Watson, after the making the articles of agreement, did not as soon as practicable and convenient, send an agent to Europe, for the purpose of exhibiting the invention, and selling and disposing of the looms, and the right of making, using and vending the same; and further, that neither they, nor their agent, made all suitable, proper and reasonable efforts and exertions, to exhibit the invention, and to sell and dispose of the looms, and the right of making, using and vending the same, to the best advantage, as by their covenants in the agreement, they were bound to do. And that the covenants of the plaintiffs, being a condition precedent to the performance of the covenants of Walker and McIntire, they ought not to be bound to the performance of their covenants, until the plaintiffs have in all things performed and fulfilled their covenants. The fifth plea, was one of set-off. To these several pleas, the plaintiffs replied, and tendered an issue to the country, which was joined by the defendants.

The fourth plea, was in these words : " and for a further plea in this behalf, the said Walker and McIntire, by leave of the court here, for this purpose, first had and obtained, according to the statute, in such case made and provided, say, the plaintiffs ought not to have or maintain their action aforesaid, thereof, against them, because they say, that, although said Austin and Watson, after the making said articles of agreement, did send an agent to Europe, for the purpose of exhibiting said invention and of selling and disposing of the said looms, and the right of making, using and vending the same; yet the said Austin and Watson, did not, within a reasonable time after the making the said articles of agreement, inform the said Walker and McIntire, and make known to them, that neither they, or their agent, had been able to effect such sales, to the amount of one thousand dollars and all the expenses of such agency, and request of said Walker and McIntire, a re-payment of the sum of one thousand dollars, and the reasonable expenses of the

agency aforesaid; or a conveyance and assurance to said Watson and Austin, of the full undivided half of said patent right in the United States, in said declaration mentioned, as by the tenor of their covenants in said articles of agreement, they were bound to do; and the covenants of said plaintiffs, being a condition precedent to the performance of the covenant of said Walker and McIntire, they ought not to be bound to the performance of their covenants, the said plaintiffs not having in all things performed and fulfilled their aforesaid covenants; and this they are ready to verify: wherefore, they pray judgment, if the plaintiffs their action aforesaid, thereof, against them ought to have or maintain, and for their costs."

To this plea, there was a general demurrer, and joinder. The agreement upon which the action was founded, was as follows: "An agreement made this nineteenth day of August, 1840, between Richard Walker, and Jefferson McIntire, both of Portsmouth, of the one part, and Benjamin Watson and Elijah Austin of the other part, witnesseth: that whereas, said Richard Walker has invented a certain improvement in a rotary power stocking loom, for which he has obtained letters patent of the United States, bearing date on the fifth day of December, 1839, and has sold said McIntire, the one undivided half part of the same; now the said Walker and McIntire for the consideration of one thousand dollars, paid by said Watson and Austin, and of the agreements of said Watson and Austin, hereinafter written, have assigned, sold, and set over, and do hereby assign, sell, and set over to said Watson and Austin, all the right, title and interest, which we have in the invention and patent aforesaid, for, to, and in all parts of the world, without the limits of the United States, the same to be held and enjoyed, by said Watson and Austin, for their own use and benefit, as fully and entirely as the said Walker and McIntire, or either of them, might have held and enjoyed the same, had not this assignment or sale been made; and said Walker and McIntire, for the consideration aforesaid, do hereby sell to said Watson and Austin, one of the said looms, perfect and complete.

"And the said Walker and McIntire, futher agree and prom-

ise hereafter to furnish said Watson and Austin, at the cost thereof, such other of said looms, as models and specimens, as may be necessary to enable them advantageously to exhibit such invention, and sell and dispose of the same.

"And the said Watson and Austin, agree and engage, as soon as practicable and convenient, to send an agent to Europe, for the purpose of exhibiting said invention, and of selling and disposing of said looms, and the right of making, using, and vending the same, and that they and their said agent, shall make all suitable and proper efforts to do the same to the best advantage, and whenever they shall have sold and disposed of the right of using, making, or vending said looms, or invention as aforesaid, to the amount of twenty-five hundred dollars, said Austin and Watson, shall and will pay said Walker and McIntire, the further sum of fifteen hundred dollars.

"And the said Walker and McIntire, and each of them, agree and promise to execute and deliver to said Watson and Austin, or their agent, all such papers, or instruments in writing, as shall be necessary for the purposes aforesaid. And they further agree and engage, that they will not sell any of said machines or looms, until said Watson and Austin shall have had reasonable and sufficient time to make the aforesaid sales in Europe. And in case of the using all proper and reasonable exertions to sell such right and privilege in Europe as aforesaid, said Watson and Austin, or their agent, shall not be able to effect such sales, to the amount of the said sum of one thousand dollars, and all the expenses of such agency, then, in such case, said Walker and McIntire, agree and promise to repay said Austin and Watson, said sum of one thousand dollars, and all the reasonable expenses of the agency aforesaid, or to convey and assure to them, the full undivided half of said patent-right within the United States."

A trial was had upon the issues of fact, during the progress of which, several questions arose.

It was proved, that the plaintiffs, on the first of October, 1840, sent out to England, a man named Oliver L. Reynolds, as an agent to effect sales of the machines, described in the agreement, and the right to make, use and vend the same ; and

there was evidence introduced by the defendants, of the nature and character of Reynolds' previous pursuits and occupations, bearing upon the question of his fitness for such agency. The plaintiffs offered to prove a conversation between the parties, before the contract was made, but while it was in agitation, wherein the defendants said in substance, that Reynolds was a proper and competent person to go to Europe, to sell such machines and invention. The defendants objected to the evidence, but it was admitted.

To prove the expenses attending the agency in England, Reynolds was examined. He stated, that as to certain of the expenses incurred, he had a distinct recollection; but as to the others, including most of the smaller expenses, he could not state them from memory. He produced a bill of those expenses which were incurred from September, 1840, to June, 1841. He said he made a minute of them about the time they were incurred, in a pocket memorandum-book. After his return to this country in the fall of 1844, he copied a bill of those expenses from these minutes, and from that bill he made another copy. Both these bills were produced, but the witness was unable to identify the one which was transcribed from the original memorandum. The two bills *were not exact copies* of each other. The original memorandum was not produced, nor shown to be lost; but the witness testified, that after he made a copy, he effaced the writing on the memorandum-book. He said, that on examining this bill, he was able to recollect some items, he could not otherwise remember. He further stated, that at the time he made this bill, he knew and remembered that the several items mentioned in the bill, were correct. The defendants objected that the witness could not be permitted to testify, with a reference to this bill. But the court held, that it was immaterial when the bill was made, if the witness testified he knew it to be correct at the time it was made, and admitted the evidence.

A question arose as to the time when, by the law of England, the specification of a new invention may be filed after the issuing of a patent. The plaintiffs offered the said Reynolds as a

witness, and he testified, that he knew what the law of England was, on this subject, having had an interest to ascertain the law, and having enquired of lawyers reported to be familiar with this branch of the law ; and the court admitted his testimony, subject to exception.

For the purpose of proving certain charges claimed by the plaintiffs as parts of the expenses of the agency in England, namely, the charges of money paid to secure a patent-right in England, the plaintiffs offered in evidence the patent under what purported to be the great seal of England. The defendants objected to its admission, unless further evidence was introduced in relation to it, than what the document and the seal contained ; but the court admitted it.

The court allowed a letter of the defendant, (McIntire,) dated August ninth, 1840, to Reynolds, to be read to the jury, as evidence of the defendant's assent to Reynold's appointment to go to Europe, to sell the invention, though objected to by the defendants. The letter was as follows:

"*Portsmouth, August 9th,* 1840.

"BROTHER REYNOLDS—*Dear Sir:* Why I write, I feel fearful that you will let this chance for a great bargain, slip ; for I do say there is the greatest bargain that I ever knew, or heard of before. That is my opinion. And I want you and your uncle, to come down this week and see if we cannot make a bargain. In the first place, I think there is a great chance to make you rich. In the second, I have never seen a man so well calculated to go out there, in all my travels, as you are. And in the third place, I had as lief make you rich, as any brother I have.

Please answer this, or come down immediately.

Yours with respect,

JEFFERSON McINTIRE."

The plaintiffs offered to prove a conversation, which took place between the parties just before the contract in suit was executed, relative to the taking out of letters-patent in England, and showing that it was understood by the parties that one of the earliest things to be done in that country, would be to take out letters-patent there for the invention. The defendants objected, but

the court admitted the evidence. And the court referred it to the jury to decide, as a matter of fact upon the evidence, whether the expense of obtaining that patent, was a reasonable and proper expense attending the agency, or whether it was an expense incurred by the plaintiffs for their own benefit and security.

The defendants contended that as soon as the letters-patent were taken out in England, as it appeared they were in the name of Reynolds, the invention became the property of the plaintiffs, and the defendants' liability to refund the thousand dollars and pay the expenses of the agency ceased; and asked the court so to instruct the jury. But the court instructed the jury that the defendants, having assigned to the plaintiffs all their right to the invention out of the United States, it was proper the patent should be taken out in their name, or that of their agent, as they chose; and that the liability of the defendant for the expense of the agency, and the re-payment of the thousand dollars, advanced by the plaintiffs, was not affected by that circumstance, and that their liability for the expense of the patent depended, not upon the name in which it issued, but upon the question whether that expense was a reasonable and proper expense attending the agency.

It appearing, by Reynolds' testimony, that he had done nothing towards effecting a sale until the letters-patent were issued in England, November 25th, 1840, and that on the twelfth of January, 1841, he made a contract with Brittle & Co., to improve the machine, for which, if successful, he was to receive fifteen thousand pounds sterling; and was to keep the whole matter secret from that time, and that up to that time, he had never offered the same for less than forty thousand pounds sterling, and that he had never received any offer whatever from any person, except the offer of fifteen thousand pounds sterling, in case the machine could be improved in certain respects; the defendants contended that the agent did not make such exertions to sell as would entitle the plaintiffs to recover; that the agent was bound to sell for a sum equal to the thousand dollars and the expenses of the agency if he could get no more. The court left it to the jury, upon the evidence, to decide whether

the agent had, or had not made proper efforts to effect sales of the patent right; and whether the naming of a price, so high as forty thousand pounds sterling, had, or had not the effect of preventing sales at a lower rate; at the same time stating to the jury, that if the agent found no person who appeared desirous to make the purchase, it was not necessary that he should offer it at any particular price.

The contract providing that an agent should be sent to Europe, the defendants contended that the plaintiffs had not performed their part of the contract, the agent sent by them having made efforts to sell in England only, and in no other part of Europe. The court, however, instructed the jury, that it was for them to determine, upon the evidence, whether the attempts made by the plaintiffs' agent to sell in England, were reasonable and proper efforts, to effect sales of the invention; or whether it was reasonable and proper, that those efforts should be extended to any, and what other part of Europe.

Reynolds, the plaintiffs' agent, testified, that he ceased to be their agent, in June, 1841, but he continued in England and Scotland, till the autumn of 1844, engaged in his own private business.. The plaintiffs contended that in addition to the other expenses of the agency, they were entitled to recover the ordinary expenses of the return of the agent to the United States; and the court so instructed the jury.

To the several rulings and instructions of the court, the defendants excepted.

The jury returned a verdict for the plaintiffs, which the defendants moved might be set aside, and a new trial granted, on account of said exceptions. They also moved for a new trial, because certain letters of the defendants, which were put in evidence, were handed to the jury, although they had been written upon, and the lines in the same underscored, for the purpose of attracting attention, and although the defendants objected to their being handed to the jury, with the other evidence. The objection, however, was not made to the court, but by one counsel to the other, and the facts in regard to the letters, were not brought to the notice of the court till after the verdict was returned.

The questions arising upon the demurrer, and also upon the motion for a new trial, were transferred to this court for determination.

*Emery,* with whom was *J. S. Wells,* for the defendants.

I shall first consider the questions arising upon the plaintiffs' demurrer to our fourth plea. Upon this plea, this question is raised: were the plaintiffs bound, within a reasonable time after making the agreement, and before the commencement of this action, to make known to the defendants, their failure to make sales in Europe, and the amount of the expenses, and make demand on the defendants, to pay the thousand dollars and expenses of the agency, or convey to them one half of the patent right in the United States?

The defendants contend, that this duty rested upon the plaintiffs; and not having been performed, they cannot maintain this action. Whenever the defendants' liability to perform an act, depends upon another occurrence, which is best known to the plaintiff; and of which the defendant is not legally bound to take notice, the plaintiff must allege and prove that due notice was in fact given; because the request is parcel of the agreement, and traversable. 1 Chitty's Pl., 496; Com. Dig. Pl., c. 73; Arch. Pl. & Ev., 91.

Or in other words; when the contingency upon which a contract is to be performed, or the matter alleged in pleading is to be considered as lying more properly in the knowledge of the party pleading, than of the other, there ought to be an averment that the other party had notice thereof, and the omission of such an averment will be fatal. *Holmes* v. *Twist,* Hob. Rep., 51, note to William's edition; 2 Saund. Rep., 62, a, note, 4; *Lent* v. *Paddleford,* 10 Mass. Rep., 238; *Hatch & a.* v. *White & a.,* 22 Pick. Rep., 518.

The defendants were not bound to pay the plaintiffs any money, except upon the failure of the plaintiffs to sell the invention in Europe. Whether the plaintiffs did, or not, fail, the defendants could not know except through the plaintiffs; their liability, then, depended upon an occurrence, which was best known to

the plaintiffs, and the case comes directly within the principles above stated.

Another principle of law, applied to this case, sustains the plea. Where, by the express or implied terms of the contract, it is incumbent on the plaintiff, before the commencement of his action, to request the defendant to perform his contract, such a request being, as it were, a condition precedent, must be averred and proved. 1 Chitty's Pl., 323 ; 1 Arch. N. P., 70, 71 ; Arch. Pl. & Ev., 153 ; Com. Dig. Pl., c. 69 ; *Birks* v. *Tippet,* 1 Saund. Rep., 32, note 2 ; *Bach* v. *Owen,* 5 Durn. & East, 409 ; *Davis* v. *Emery,* 11 N. H. Rep., 230 ; *Roundtree* v. *Hendricks, adm'r.,* 1 B. Monroe's Rep., 189. This last case, we consider particularly in point.

The contract between the parties, does not provide that the defendants are to pay the expense of the attempt to sell in Europe, or convey one half of the patent right in the United States, *upon demand or request,* but such must, we think, be clearly implied and understood from the agreement. They have an election to pay in money, or to convey one half of the patent right. How long were they bound to retain in themselves the patent right ? A reasonable time ; and if they heard nothing from the plaintiffs within a reasonable time after making the agreement, they might well suppose that the plaintiffs had been successful, and they, therfore, under no liabilities to pay, or convey. It must then have been understood, as part of the contract, that the plaintiffs were bound to give the defendants notice of their failure to sell in Europe, and request a conveyance of one half of the patent right in the United States. If so, the notice and demand, are a condition precedent to the plaintiffs' right to recover.

Again, the plaintiffs' right, was a contingent one. They had no right, unless they made a failure to sell. How were the defendants to know that the contingency had happened, except from the plaintiffs, who were bound to give the defendants the notice within a reasonable time, because the defendants had their election to pay money, or convey part of the patent right ? *Barker* v. *Jones,* 8 N. H. Rep., 413. For these reasons we say that

there should be judgment for the defendants upon the demurrer.

II.   The defendants contend, that the verdict should be set aside and a new trial granted, by reason of the exceptions taken upon the trial.

1.   The declarations of the defendants about Reynolds being a fit person to go to Europe, as agent for the plaintiffs, were inadmissible.   The defendants had nothing to do or say, in relation to employing the agent.   It was no concern of theirs, nor were they answerable for him.   The only question arising upon this subject is, did he do all that a person well qualified for the business could have done to effect a sale.   It would be no answer to the complaint that he had neglected his duty, that the defendants spoke of him, or recommended him, as a suitable and fit person to transact the business.

2.   The evidence of Reynolds, with the copies of the bills of expenses, was improperly admitted.   The bill of expenses was admitted to go to the jury as evidence ; and it was a copy, not an original.   It does not come within the principle laid down in *Haven* v. *Wendell & a.*, 11 N. H. Rep., 112.   The cases of *Burton* v. *Plumer*, 2 Adol. & El., and *Merrill* v. *Ithica Railroad Co.*, 16 Wendell's Rep., 586, referred to, and commented upon, in *Haven* v. *Wendell*, seem to be directly in point.   See also, *Doe* v. *Perkins*, 3 D. & E., 754 ; *Jones* v. *Stroud*, 2 Car. & P., 196 ; *Steinkeller* v. *Newton*, 9 Car. & P., 313 ; 1 Stark. on Ev., 178, 179 ; 2 Phil. Ev., Hill & Cowen's note, 756 ; 3 Phil. Ev., H. & C. note, 1239.   The principal, and only sound reason for admitting the paper as evidence, in *Haven* v. *Wendell*, was, that it was a record of a fact, made at the time, where the witness was little liable to mistake, and better than his recollection of the facts long afterwards.

3.   Reynolds should not have been allowed to testify as to what the law of England is, in regard to filing a specification. It should have been proved by a certified copy of the law, as it is a statute provision.   Reynolds knew nothing upon the subject except by hearsay.   1 Greenl. Ev., §§ 486 to 489 ; 3 Phil. Ev., H. & C., note, 1142.

4.   The seal to the patent should have been proved, or in

some way identified.   Our courts will undoubtedly take notice of the seals of the several States, and of the courts of the United States, but the rule must be different in relation to foreign countries.   How are the courts of this State to know any thing about the seals of foreign nations ?

5.   The letter of McIntire to Reynolds was improperly admitted.   It was not between the parties to this suit.   It was from one of the defendants ; and being laid before the jury, affected the rights and interests of the other defendant, who never assented to it or had any knowledge of it.   The admission or statements of the one are not evidence against the other.   *Kelley* v. *Sanborn*, 9  N. H. Rep., 46 ; *Exeter Bank* v. *Sullivan*, 6 N. H. Rep., 124 ; *Jaggers* v. *Binnings*, 1  Stark. Rep., 64 ; Collyer on Partnership, 456, 689.

6.   The conversations of the parties, had about the time of making the contract, about taking out letters-patent in England, were not properly admitted.   The question made, was this : was the taking out of letters-patent in England, necessary to accomplish the purposes of the plaintiffs, in sending an agent to Europe, and were the defendants bound to pay the expenses of the same ?   This question must be settled by a reference to, and a construction of, the contract.   The contract is in writing, under seal, and executed by the parties after due deliberation, and with the usual formalities of a sealed instrument.   It is susceptible of construction, and the conversations of the parties, had at, or about the time of the execution, were therefore inadmissible.   *Hasbrook* v. *Paddock*, 1  Barb. Rep., 635 ; 3 Phil. Ev., C. & H. notes, 1466, 7, and 8 ; 1 Greenl. Ev., § 275.

7.   The court erred in leaving the construction of the contract to the jury.   The several questions that were left to them in regard to the reasonableness of the expenses, were not questions of fact, but of law.   They depended upon the construction to be given to the contract, and should, therefore, have been decided by the court, without being left to the jury.   The interpretation as well as the construction of a written instrument, is for the court, and not for the jury.   1 Greenl. Ev., 400, note 4 ; Story's Agency, 63, note 1 ; Paley's Agency, 198 ; *Thompson*

*& als.* v. *Giles & als.*, 2 Barn & Cress. Rep., 422 ; *Wharf* v. *Howell*, 5 Binney's Rep., 499 ; 1 Stark. Ev., 525 ; *McBeath* v. *Haldibrand*, 1 D. & E., Rep., 180.

8. The verdict should be set aside, on account of the letters being given to the jury after they had been underscored for the purpose of attracting attention. Upon this point it is only necessary to refer to the case of *Knight* v. *Colman*, decided in Rockingham county, July term, 1848.

*Christie*, with whom was *Hale*, for the plaintiffs.

The first questions considered by the defendants, are those arising upon the demurrer to the fourth plea. This plea is bad, and the demurrer thereto well taken, for several reasons.

1. It is a rule of pleading, that a plea in bar must deny, or confess and avoid the facts stated in the declaration. 1 Chitty's Pl. 525 ; 5 B. & C., 479 ; Tidd, 653 ; Steph. on Pl., 52, 200. This plea does neither of these.

Again, every plea should be so pleaded, as to be capable of trial; and therefore must consist of matter of fact, the existence of which may be tried by a jury, on an issue, or the sufficiency of which may be determined by the court upon demurrer. And if fact be improperly confounded or mixed, in the plea, with matter of law, so that it cannot be tried by the court or jury, the plea is bad. This plea is bad under this rule. It alleges, that the plaintiffs did not within a reasonable time give notice, and make demand. This is like the case of a suit on a bond, conditioned that the defendant will show a sufficient discharge of an annuity, to which a plea that defendant showed a sufficient discharge, is bad. 9 Co., 25, a. ; 19 Johns. Rep., 371 ; Lawes Pl., 138 ; 1 Ch. Pl., 540 ; 2 Mod. 55.

2. The ground of defence, stated in this plea is, that the plaintiffs did not, within a reasonable time, give to the defendants the notice, *and* make upon them the demand in the plea mentioned. If then it was not necessary for the plaintiffs, within a reasonable time, to give the notice and make the demand, to, and upon *both* of the defendants, the plea is bad, and the demurrer must be sustained.

The rule in relation to notice is well settled, and is, that whenever the fact upon which the defendant's liability is incurred, lies peculiarly within the knowledge and privity of the plaintiffs, notice thereof must be stated and proved to have been given to the defendant. But when the matter does not lie more properly in the knowledge of the plaintiff, than of the defendant, notice need not be averred. On these points the rule is clear, and all the authorities agree.

When notice is necessary, it ought to appear that it was given in due time, and to a proper person. And if several are bound by obligation, or covenant, to do an act, upon notice to *them*, notice to one of them is sufficient. Com. Dig. Pl., ch. 74; Do., 71; Do., Condition L., 9; *Holbrook* v. *Holbrook*, 9 Shepl. Rep., 9.

Under the above rule, no notice from the plaintiffs to the defendants was necessary; for the defendants' liability depended upon the doings and success of the agent, who was sent to Europe; and though he was sent by the plaintiffs, the defendants had an interest in the agency, and a consequent right to be informed and kept advised by him of his doings; and they had also equal opportunity with the plaintiffs to be informed of his doings and success.

But if this be not so, and the events upon which the defendants' liability was dependant, were so peculiarly within the knowledge of the plaintiffs that they were bound to give notice to the defendants, still notice to *one* of them was enough, and the plea should have alleged that notice was not given to the said Walker and McIntire, or *either* of them, as the plaintiffs were not bound to notify *both*.

But the plea goes upon the ground, that *notice* within a reasonble time to both the defendants was not enough, but that the plaintiffs must also allege and prove that they, within a reasonable time, requested of the defendants, a re-payment of the sum of $1000, or a conveyance, &c. But even if the law required the notice claimed by the plea, it did not require, in addition thereto, a *request* to perform one or the other alternatives. The moment the contingency, upon the happening of which the de-

fendants covenanted to perform one or the other of said alternatives, had happened, and the defendants were properly informed thereof, their liability attached and was fixed, and they became liable and bound, upon a good and executed consideration, to do or perform one or the other, at their own election, of said alternatives, as matter of debt or duty. 1 Saund., 33 ; Com. Dig. Pleader, C., 69 ; *Amory* v. *Braddick,* 5 B. & A., 712 ; 1 D. & E., 361 ; Bul. N. P., 151, C. ; *Simpson* v. *Routh,* 2 B. & C., 683 ; *Wallis* v. *Scott,* 1 Strange, 88 ; *Bockenham* v. *Thacker,* 2 Vent., 75 ; Cro. Eliz., 85 ; *Lent* v. *Paddleford,* 10 Mass. Rep., 230 ; *Townsend* v. *Wells,* 3 Day's Rep., 327 ; *Smith* v. *Emery,* 7 Halst. Rep., 53.

In the case at bar, if notice was necessary, then we submit, that when the contingency has actually happened, and the plaintiffs have seasonably given the notice, the defendants have the full knowledge of the completion of the consideration of their promise or undertaking ; and that consequently, nothing in addition to the notice is necessary, to fix their liability.

3.   But if it should be held, that the plaintiffs, in addition to giving the notice within a reasonable time, were bound to *request* the defendants to repay the $1000, and the expenses, or to convey one half of the patent, in order to entitle them to main tain their action ; we submit that it is enough, that such demand was made at *any time before* the action was commenced, and that it was not necessary that such request should be made within a reasonable time after the making of the agreement, as in the plea is required to be done.   We admit that the notice, if any were required, must be within a reasonable time ; but a demand and request at any time before action brought, is sufficient ; more especially when notice of all the facts has been given within in a reasonable time.   The case from B. Monroe's Report, as also *Barker* v. *Jones,* and *Davis* v. *Emery,* cited by the defendants' counsel, do not appear to me to have any particular application to the question.   With these few suggestions, we submit the questions arising on the demurrer.

II.   The defendants having introduced evidence tending, or designed to show Reynolds incompetent to execute the agency

contemplated in the contract, the plaintiffs had of course the right to introduce counter evidence on this point, thus rendered material, if it were not so before ; and what more pertinent evidence could there be than the declarations of the defendants themselves ? Again, in the view the defendants take of the matter, it was immaterial ; and for the admission of immaterial evidence the court will not set aside a verdict. *Clements* v. *Brooks*, 13 N. H. Rep., 92.

III. The ruling of the court, admitting the testimony of Rey nolds and the bill, to prove the small expenses, will we think, upon consideration of all the facts and cases, and the doctrine and practice of this court, be found to be right. In *Haven* v. *Wendell*, 11 N. H. Rep., 112, the matter is very fully and ably discussed, and most of the important cases commented upon. We rely upon the doctrine of that case as fully sustaining this ruling. The principle established in that case and in many others, is, that if the witness swears that the paper or memorandum was made by him or another in his presence, and under his inspection, and that, at the time it was made, he knew the statements therein contained to be true, but has now forgotton them, then, the writing, with this declaration of the witness, became admissible in evidence. There is, should be, or can be no limitation of the time, within which, after the occurrence of the events recorded in the memorandum, the entries should or must be made, other than that they must have been made while the witness has a recollection and knowledge of their truth. And we submit and contend that the memorandum of 1844, was as much an original, as the former one. They were both the offspring of memory, or both sanctioned and ratified by memory. *Benton* v. *Plumer*, 2 Ad. & Ellis, 341.

Though we did not show the loss of the memorandum-book, yet we did show the utter destruction and loss of the writing, which was the only material thing about it. We kept back nothing.

IV. Reynolds' testimony as to the patent law of England, in the particulars in question, was admissible. Foreign unwritten laws, customs and usages may be proved, and indeed must be

proved, by parol evidence. *Church* v. *Hurbart*, 2 Cranch. 237 ;
Sto. Con. Laws, 530 ; *Kenney* v. *Vanhorn*, 1 Johns,. 384 ; *Wood-bridge* v. *Austin*, 2 Tyler, 367 ; *Livingston* v. *Maryland Ins. Co.*, 6 Cranch, 274 ; *Lincoln* v. *Battell*, 6 Wendl., 482 ; *Bagley* v. *Francis*, 14 ; Mass. Rep., 453 ; *Bush* v. *Wilkins*, 4
Johns. Ch. Rep., 506, 520 ; 3 Wendell, 177 ; 13 Pick. Rep.,
293.

The party objecting to parol evidence of a foreign law, must
show it to be a written one, or the objection will not prevail.
*Dougherty* v. *Snyder*, 15 Serg. & Rawle, 84, 87 ; 6 Cranch,
274, 280 ; *Newsom* v. *Adams*, 2 Mill. Lou. Rep., 155.

V. The great seal of England, proved the patent offered ;
and the court properly admitted the same. 1 Greenl. Ev., § 4 ;
2 Cranch, 187, 238 ; 2 Cowen, 85, 90 ; 4 Dall., 416 ; Wheat.,
273 ; 9 Mod., 66 ; 6 Wendell, 475.

VI. The letter of McIntire was admissible. He is a party
to the record, and the general rule is, that the declarations of a
party to the record, or of one identified in interest with him, are,
as against such party, admissible in evidence. This rule applies
to all cases where the party has any interest in the suit, wheth-
er others are joint parties on the same side with him or not. If
the parties have a joint interest in the matter in suit, whether as
plaintiffs or defendants, an admission made by one, is, in general,
evidence against all. There are numerous authorities that sus-
tain this position. But the defendants' counsel cites and relies
upon the case of *Exeter Bank* v. *Sullivan*, 6 N. H. Rep., 124.
Although this case, contrary to many others, holds that an ad-
mission, or promise, by one joint debtor, does not take a case out
of the statute as to another joint promissor, still the court, in giv-
ing the opinion, expressly admit and affirm the principle for which
we contend, " that an admission in such case by one, that the
debt is unpaid, is an admission of the fact against all." We
think this case settles this point for the plaintiffs.

VII. As to the questions left to the jury relative to the ex-
penses of the agency, we think the counsel upon the other side
has taken an erroneous view of the whole matter. We do not
differ from him in the law laid down, but we contend that the

court did give all proper constructions to the contract, and left to the jury only questions of fact arising upon the same. The court on examining the case will so find.

VIII. The English patent was properly taken in the name of Reynolds. It was taken to secure the interests of all concerned, and did no wrong to the defendants. The charge of the court in this respect, was correct, as were also the instructions in regard to the expenses of the home passage.

IX. The papers mentioned in the affidavits went to the jury by the consent of the defendants' counsel — at least so we regard them. At all events, they were immaterial, and the verdict cannot be set aside on account of their going to the jury.

EASTMAN, J. This action was brought upon an agreement under seal, dated August nineteenth, 1840, which is set forth at length, in the facts of the case. The declaration sets out the agreement in full, with the general averments, that the plaintiffs have kept, fulfilled and performed, all matters to be by them fulfilled and performed, and a general allegation of request upon the defendants, and neglect and refusal by them.

Several pleas were interposed to the plaintiffs' right of recovery, upon all of which, excepting the fourth, an issue of fact was joined. To the fourth, a general demurrer was filed, and the defendants joined in demurrer. Pursuing the course adopted in the argument, we will first consider the issue of law.

That part of the agreement, upon which the questions of law are raised, is substantially as follows; " And the said Watson and Austin agree and engage, as soon as practicable and convenient, to send an agent to Europe, for the purpose of exhibiting said invention, and selling and disposing of said looms, and the right of making, using and vending the same, and that they and their said agent, shall make all suitable and proper efforts to do the same to the best advantage." " And in case after using all proper and reasonable exertions to sell such right and privilege in Europe, as aforesaid, said Watson and Austin, or their agent, shall not be able to effect such sales, to the amount of the said sum of one thousand dollars, and all the expenses of such agency, then

in such case, said Walker and McIntire agree, and promise to re-pay said Austin and Watson, said sum of one thousand dollars, and all the reasonable expenses of the agency, aforesaid, or to convey and assure to them the full undivided half of said patent right within the United States."

The plea alleges, in substance, that although Austin and Watson did send an agent to Europe for the purpose of making the sales according to the agrement, yet that they did not within a reasonable time, inform the defendants that neither they nor their agent had been able to effect sales to the amount of one thous-and dollars and the expenses of the agency, and request of the defendants a re-payment of the sum of one thousand dollars and the reasonable expenses of the agency, or a conveyance to Watson and Austin, of the undivided half of the patent right in the United States; and that the covenants of the plaintiffs, be-ing a condition precedent to the performance of the covenant of the defendants, the defendants ought not to be bound to the per-formance of their covenants, the plaintiffs not having in all things performed and fulfilled theirs.

The principal question raised by this plea and demurrer, is, whether notice of the failure to make sales in Europe, was ne-cessary to be given by the plaintiffs to the defendants, before an action could be sustained upon the agreement. In relation to notice the rule is, that whenever the fact upon which the defend-ant's liability is incurred, lies peculiarly within the knowledge and privity of the plaintiff, notice thereof must be stated to have been given to the defendant. But where the matter lies as much within the cognizance of the one party, as the other, notice is not necessary. When, however, notice is necessary, either by the terms or nature of the contract, it is of the gist of the action, and must be specially averred in the declaration, for without such averment, no complete right of action can appear. 1 Saund. on Pl. & Ev., 132; Gould's Pleading, ch. 4, § 15; *Rex* v. *Hol-land*, 5 Term Rep., 621, 624; *Lent & a.* v. *Paddleford*, 10 Mass. Rep., 230, 238; *Clough* v. *Hoffman*, 5 Wendell's Rep., 500. To these authorities many others might be added.

By the terms of the agreement, the thousand dollars, were

not to be re-paid by the defendants, till the plaintiffs had sent to Europe, and made all reasonable exertions to sell the right there, without success. The effort to sell, was to be made either by Watson and Austin, or by their agent. It was not confined to the agent alone; and whether sales were effected or not, was a fact known to Watson and Austin, or to their agent, or both, and also to the purchasers. In making the sales, the plaintiffs are to act for themselves, and the agent is theirs. He was employed by them and is accountable to them. The defendants are interested in the sales, but the agent is in no way responsible to them or required to make known to them his doings. The defendants cannot know whether sales have been effected or not, except through the plaintiffs or their agent, or by enquiries of purchasers. If the information does not come from them, and they do not see fit to communicate it, the defendants must remain in entire ignorance of the true state of the matter, unless they employ an agent themselves, to attend the plaintiffs or their agent, and note their doings. This, the agreement nowhere contemplates; and whether sales are made or not, appears to us to to be a fact peculiarly within the knowledge of the plaintiffs. And the plain and obvious intent of the instrument is, as we think, that the plaintiffs shall, in case of failure to make sales, communicate the fact to the defendants before they can have a cause of action against them.

That the information should be communicated within a reasonable time seems clear. The condition is in the alternative. The defendants were to repay the thousand dollars, or to convey and assure to the plaintiffs the full undivided half of the patent within the United States; and it cannot be required that they should hold themselves in readiness to carry out the conditions of the agreement for an indefinite time. Com. Dig. Pleader, C., 74. The argument of counsel concedes that if notice is necessary before suit brought, it should be given within a reasonable time. Thus far, then, the plea is good. Notice should be given, and within a reasonable time.

Whether it was necessary to make a special request for a performance of the conditions before suit, depends upon the ques-

tion whether, upon notice being given of the failure to effect sales by the plaintiffs, the obligation on the part of the defendants was complete. The defendants contracted to repay the thousand dollars and also pay the expenses of the agency, or to convey one half of the right in the United States, in case the plaintiffs could not effect sales to the extent set forth in the contract. If, then, the plaintiffs should attempt to sell, using all fair and honorable endeavors so to do, and failing, should give notice of their inability to effect the sales, they do all that is required of them by the terms of the agreement or a fair construction of the same, and the obligation of the defendants arises to repay the thousand dollars or convey one half of the right in the United States. When an obligation to pay is complete, a cause of action at once arises and no formal demand is necessary. Gould's Pl., chap. 4, § 15; Com. Dig. Pleader, C., 69; *Birks* v. *Trippett*, 1 Saunders, 33, a. ; Bul. Nisi Pri., 151, C.; 1 Saunders, on Pl. & Ev., 130, 131; *Wallis* v. *Scott*, 1 Strange, 88.

Had, then, the declaration contained an averment of notice, no averment of a special demand would have been necessary, though it would be improbable, as a matter of fact, that the plaintiffs should give notice, without, at the same time, making a demand.

The plea alleges that the plaintiffs did not make known their inability to effect sales *and* request a re-payment of the thousand dollars or a conveyance of one half of the right. As we hold a demand or request to be unnecessary after notice given, the plea might have been bad on special demurrer, for containing the request in connection with the notice. But upon general demurrer, the statement that no request was made, may be regarded as immaterial, and rejected as surplusage. It was superfluous and unnecessary. If the plaintiffs had replied that they did make known their inability to effect sales, it would have been sufficient, without making any reply to the allegation of want of request; and a demurrer to such a replication would have failed. Or had issue been taken upon the plea, and notice proved, it would have been sufficient without proving any special demand.

Watson *v.* Walker.

But it is further objected to the plea, that it does not confess and avoid the facts stated in the declaration. But this objection is not well founded in fact. The plea substantially admits all the averments in the declaration, but avoids them by the introduction of new matter—by the statement that no notice was given of the failure of the plaintiffs to make sales, upon which fact the defendant's liability depended. The plea sets forth matter of fact which is traversable and upon which issue should have been joined, or a replication have been made thereto.

The further objection that the plea does not state that notice was not given to the defendants or *either* of them, cannot prevail. The defendants were jointly interested and the contract on their part was joint. A general allegation of no notice to them is all that is necessary, especially on general demurrer, inasmuch as the undertaking was a joint one by them. A notice to one, is a notice to both. Had the obligation been joint and *several*, the objection might perhaps have been good.

Upon the issue of law, then, the opinion of the court is, that there must be judgment for the defendants, upon the demurrer.

Quite a number of questions were raised upon the trial of the issues of fact, which, for the present disposition of the case, would be unnecessary to settle ; but as the action will probably be tried again, upon a change of pleadings, we have thought best to state, as briefly as may be, our opinion upon the several exceptions taken.

The evidence in regard to the statements of the defendants, touching the qualifications of Reynolds as an agent to go to Europe and effect the sales, was rightly admitted. It was a part of the contract that the plaintiffs should send an agent to Europe to sell the looms and right there. The defendants undertook to show that the agent who was sent, was not qualified ; and to answer this position and rebut this evidence, the statements of the defendants in regard to the agent were admissible. They had no connection with the terms of the contract so as to be objectionable, as varying, in any way, the written agreement between the parties.

Upon the next point raised, the correctness of the ruling is

very questionable. The bill produced and which was permitted to go to the jury, was a copy of items taken from a pocket memorandum book, three years after the original entries were made. And although the witness testifies that at the time he made the copy, he knew and remembered that the several items mentioned in the bill were correct, yet none of the cases, so far as our researches have extended, have gone to the extent that a copy may be admitted, in connection with the testimony of the witness. But wherever the question has been distinctly raised the copy has been held inadmissible. This was the case in *Merrill* v. *Ithica R. R. Co.*, 16 Wendell, 586 ; *Doe* v. *Perkins*, 3 D. & E., 749 ; and *Tanner* v. *Taylor*, cited in *Doe* v. *Perkins*. And it appears to us that it would be a rule of very doubtful expediency to allow a witness to make a copy of an original, years after the transaction, and be permitted to use that copy as original evidence.

Again, in this case, two copies were made. Which is to be used ? The witness is unable to identify the one taken from the original, and they are not exact copies of each other. If not exact copies, how far may they be permitted to vary before losing their character as original evidence ? And further, the original itself was not destroyed. It is true the witness testified it had been effaced, but it would have been more satisfactory to have have had it produced, that the court might inspect it.

The doctrine of *Haven* v. *Wendell*, 11 N. H. Rep., 112, was evidently adopted after a full examination of the case, and after careful and mature consideration. A reëxamination of those cases and the lucid and pointed remarks of the very able and learned chief justice who delivered the opinion in that case, satisfy us that the principles there laid down were entirely correct. It was there held that where a witness reduced the conversation to writing immediately after it took place, and testified that he had no doubt that the facts stated in the memorandum were true, the original memorandum might be used in connection with the testimony of the witness. But in the case at bar, it is not the original entries, made at the time or immediately after the transactions, connected with the testimony of the witness that, at the

time he made them, he knows they were true, that were used, but a copy, made three years after the original, and a recollection that, at that time, the witness remembered that the entries he had made were correct. As we view it, this is extending the principle of *Haven* v. *Wendell*, to a considerable extent. Lapse of time, three years for instance, in most cases impairs the recollection and weakens the confidence that we place in human testimony. It is one thing to make a memorandum correctly at the time of a transaction, and quite another to make it three years thereafter. With these suggestious we pass this point.

The ruling admitting the testimony of Reynolds to show what the law of England was, as to the filing of a specification of a new invention, was incorrect. The written or statute laws of a foreign government must be verified in the same manner as foreign judgments : by the exemplification of a copy under the great seal of state, or by a sworn copy. Unwritten laws may be shown by parol evidence. Upon these points the authorities are numerous and generally uniform. Whether the law proposed to be proved by Reynolds was written or unwritten does not distinctly appear. Probably it was statute law, and if so, his testimony would be incompetent on that account. Some authorities hold that the party objecting to the parol evidence must show the law to be a written one. *Dougherty* v. *Snyder*, 15 Serg. & Rawle, 84, 87. But assuming that it was unwritten, the testimony of Reynolds was still incompetent to prove it. The knowledge which he possessed was not of that character which a court could rely upon. It could not be regarded as anything more than hearsay. Witnesses to be competent to prove unwritten laws must be *instructed* in them. Story's Con. of Laws, 530 ; *Church* v. *Hubbard*, 2 Cranch's Rep., 237 ; 1 Greenl. Ev., § 488.

The great seal of England proved the patent. The national flag and seal are recognized by all nations. The national seal, affixed to the exemplification of a law or judicial proceeding, proves itself. *Church* v. *Hubbart*, 2 Cranch's Rep., 187 ; *Lincoln* v. *Battelle*, 6 Wendell's Rep., 475 ; *Griswold* v. *Pitcairn*, 2 Conn. Rep., 85 ; *State* v. *Carr*, 5 N. H. Rep., 367. The ruling of the court upon this point was correct.

Watson *v.* Walker.

So, also, we think the ruling to be right in admitting the letter of McIntire to Reynolds. It contained evidence tending to show the fitness of Reynolds to transact the business, and was the sayings of one of the defendants in regard to him. It was the admission of an independent fact; and as such was competent to be considered.

Thus, too, in regard to the next exception. The conversations prior to the execution of the agreement, as having a bearing upon the expenses of the agency were properly admitted. They were independent facts and formed no part of the contract and in no way affected it.

The instructions of the court in regard to the taking out of the patent in Europe, in the name of Reynolds, and also in regard to the proceedings of Reynolds in attempting to effect sales, were, we think, correct. They were mixed questions of law and fact, and we do not discover any error in the instructions given.

We think, also, that the court judged correctly in leaving it to the jury to determine whether the agent had used all proper and reasonable exertions to sell the right in Europe. Both parties were interested that the sales should be effected if they could be. And if they could not be, it was certainly for the interest of the defendants that the expenses should not accumulate. Whether the agent should traverse the different countries of Europe, and if so to what particular extent; or whether he should not attempt to go beyond England, in using all reasonable and proper efforts to effect sales, appears to us to be clearly a question of fact for the jury. The point was, did he use reasonable and proper efforts to make the sales? Of that the jury should judge from the evidence.

We see no objection to the ruling, allowing the expenses of the return of the agent to the United States.

It is too late to take the exception that the letters were improperly handed to the jury. Had they been written upon and underscored for the purpose of attracting any special attention, and passed to the jury without the knowledge of the opposing counsel or the court; or had the matter been brought to the

notice of the court and the letters been handed to the jury under their ruling; in either event the verdict would be set aside. Juries must judge of papers as they are, and not as they shall be subsequently made by a party or his counsel. But inasmuch as the situation of the letters was known to the opposing counsel, it was their duty to have raised the objection to the court, that a ruling might have been had thereon. Omitting to do this, the exception must be overruled.

*Judgment for the defendants, on the demurrer, and verdict set aside.*