## Case No. 15,398.

UNITED STATES v. HOUSTON.

[4 Cranch, C. C. 261.] [1]

Circuit Court, District of Columbia. Nov. Term, 1832.

ASSAULT AND BATTERY ON MEMBER OF CONGRESS —PLEA IN BAR—PRIOR SENTENCE.

A conviction and sentence of an individual, not a member of congress, by the house of represen-

tatives of the United States, for a breach of privilege by assault and battery upon a member of the house, for. or on account of words by him spoken in the house of representatives, in debate, are not a bar to a criminal prosecution by indictment for the assault and battery.

CRANCH, Chief Judge (nem. con.) This is an indictment for an assault and battery committed by the defendant [Samuel Houston] upon William Stanbery, a member of the house of representatives of the United States, from the state of Ohio. The defendant has submitted his case to the court upon the evidence stated on the journal of the house of representatives of the United States, admitting the fact of the assault and battery, under the circumstances stated in that evidence; and relying upon the plea that he has been heretofore convicted and punished for the same offence, by the house of representatives. The whole case is submitted to the court without argument. The material facts, as they appear, in the evidence submitted, are substantially these: Mr. Stanbery. a member of the house of representatives of the United States, from the state of Ohio, on the 31st of March, last, in debate, in the house, made use of this language: "The superintendent of the Cumberland road is not the only officer who had been suffered to continue in office after proof of his transgressions had reached the president. Was the late secretary of war removed in consequence of his attempt fraudulently to give to Governor Houston the contract for Indian rations? I derive my knowledge of this transaction not from the columns of the Telegraph. The whole affair was known to me at the time it took place. The editor of the Telegraph gives himself too much credit for defeating this attempted fraud. I understood that it was in consequence of the remonstrances of the delegate from Arkansas that the contract was not completed. There is one fact, however, for which I am indebted to the Telegraph; and that is that the president had full knowledge of the business. and that it did not meet with his disapprobation." The speech was, at the request of one of the editors of the National Intelligencer, prepared by Mr. Stanbery for the press, and published in that gazette on the 2d of April. There does not, however, appear to be any evidence that the fact that it was thus prepared for the press by Mr. Stanbery was known to the defendant at the time of the assault and battery mentioned in the indictment. On the 4th of April. the defendant sent to Mr. Stanbery by Mr. Cave Johnson, a member of the house, the following letter:

"Washington City, April 3, 1832. Sir: I have seen some remarks in the National Intelligencer of the 2d instant in which you are represented to have said: 'Was the late secretary of war removed in consequence of his attempt fraudulently to give to Governor Houston the contract for Indian rations?'

The object of this note is to ascertain whether my name was used by you in debate, and. if so, whether your remarks have been correctly quoted? As the remarks were inserted in anticipation of their regular place. I hope you will find it convenient to reply without delay. I am your most obedient servant, Samuel Houston.

"Hon. William Stanbery, M. C."

On the 5th of April, Mr. Creighton, of Ohio, at the request of Mr. Stanbery, (having previously ascertained that Mr. Johnson was acquainted with the contents of the letter which he had delivered to Mr. Stanbery,) delivered to Mr. Johnson the following letter:

"Hall of Representatives, April 4, 1832. Sir: I received this morning, by your hands, a note signed Samuel Houston, quoting from the National Intelligencer of the 2d instant, a remark made by me in the house. The object is to ascertain whether Mr. Houston's name was used by me in debate, and whether my remarks were correctly quoted. I cannot recognize the right of Mr. Houston to make this request. Very respectfully yours, &c., William Stanbery.

"The Hon. Cave Johnson."

This letter was delivered by Mr. Johnson to the defendant in the lobby of the house, behind the speaker's chair. The defendant was much excited by reading it; used very harsh epithets in regard to Mr. Stanbery; became extremely violent, and said he would whip him before he left the house. This language he used two or three times; and upon Mr. Johnson's arguing with him that it would be a contempt, he replied that "he would right the wrong wherever it was given, even were it in the court of Heaven." But finally desired Mr. Johnson to say to Mr. Stanbery, that he would consider what would be the proper course for him thereafter to pursue.

It appears from the evidence that each party provided himself with a pair of pistols, and a dirk. Indeed it is stated that the defendant always went armed in that manner, and that he declared he would whip Mr. Stanbery wherever he could catch him. It also appears that Mr. Stanbery expected an attack immediately after the delivery of his letter to Mr. Johnson. Several days, however, having intervened without an attack, it seems that Mr. Stanbery was somewhat off his guard, when the attack was made, being armed only with a single pistol. The defendant had no weapon but a walking-cane; which is not otherwise described in the evidence than as being of young hickory. Thus armed, the parties met on the Pennsylvania avenue, not far from Mr. Stanbery's lodgings, (but on the opposite side,) about half a mile from the capitol, on the 13th of April, about eight o'clock in a moonlight evening. Although it seems probable, from the evidence, that the defendant was desirous of an opportunity to attack Mr. Stanbery, yet the meeting. at that time. seems to have been accidental. and not expected by either party. It

appears, however, that the defendant, having given the cane to Mr. Shaw, got it back for the purpose, as he said, of chastising Mr. Stanbery. The fact of his having the cane with him, at the time, seems to justify the inference that he had a previous intention to make the attack if he should meet him. While the defendant was standing on the foot pavement, Mr. Stanbery crossed the avenue, and as he stepped up on the pavement, the defendant asked if that was Mr. Stanbery; to which he replied very politely, (and bowing at the same time,) "yes sir;" "then," said the defendant, "you are the damned rascal," and struck him with a stick which he held in his hand. Mr. Stanbery threw up his hands over his head, and staggered back. His hat fell off. The defendant continued to follow him up, and to strike him. After receiving several severe blows, Mr. Stanbery turned, apparently to go away. The defendant sprung upon him in the rear, (Mr. Stanbery's arms hanging down, apparently defenceless,) seized him and attempted to throw him, but was not able to do so. Whether Mr. Stanbery extricated himself, or the defendant thrust him from him, the witness was not able to determine; but, as he passed him, the defendant struck him and gave him a trip. Mr. Stanbery fell, and the defendant continued to beat him while lying on the ground. In this situation Mr. Stanbery drew his pistol from his pocket, and attempted to shoot the defendant but the pistol did not go off. The defendant wrested it from the hand of Mr. Stanbery, and continued beating him until he ceased to speak, and laid so still, that the witness thought he was badly hurt, or perhaps killed. The witness was then about to tell the defendant to desist, but, without being spoken to, he quit, of his own accord. Mr. Stanbery then rose. Some altercation passed between them. Mr. Stanbery asked him why he attempted to assassinate him in the night. To which the defendant replied, that he had not attempted to assassinate him, but had chastised him for having traduced his reputation; and to an observation by some other person, he answered that if he had offended the law he would answer for what he had done. The defendant gave Mr. Stanbery a great many blows; and the stick, which did not appear, by the sound of the first blows, to be split, did appear, by the sound of the subsequent blows to have been split during the beating. Mr. Stanbery received several violent blows on his head; one bone in his left hand was fractured; and his left arm was much bruised. He also received a severe blow on the right arm, at the elbow, and another on the back of his right hand. On the day after this transaction, Mr. Stanbery addressed a letter to the speaker of the house, saying that he was waylaid and beaten by the defendant, for words spoken in debate; confined to his bed, and unable to discharge his duties in the house. To this letter was appended Mr. Stanbery's affidavit, verifying the facts.

The defendant, having been arrested by the order of the house, the following interrogatories were propounded to him: (1) Do you admit or deny that you assaulted and beat the said Stanbery, as he has represented in the letter which has been read, a copy of which has been delivered to you, by the order of the house? (2) Do you admit or deny that the same assault and beating were done for or on account of words spoken by said Stanbery, in the house of representatives, in debate?

1. To the first he answered, as follows: The accused denies that he assaulted and beat the said Stanbery, as he has represented in the letter which he has read. He admits that he felt great indignation on reading in the National Intelligencer, remarks there stated to have been made on the floor of the house of representatives, by the said Stanbery, imputing to the accused, by name, a gross offence, of which he knows himself to be innocent, and the dissemination of which, throughout the country, by such publication, was evidently calculated to affect his honor and character. Under these circumstances, the accused was induced to require of the said Stanbery, in a respectful note, whether the report of what he had said was truly set forth in the said paper; to which inquiry, thus made, said Stanbery refused to give any answer, in a manner still further to injure the accused. The accused admits that he was greatly excited by those provocations, and that, under the influence of feelings thus excited, he did, on accidentally meeting the said Stanbery assault and beat him, the accused being then unarmed with any other weapon than a common walk-cane, and believing the said Stanbery to be, as he, in fact, was, armed with pistols. That the meeting took place several hours after the adjournment of congress, about 8 o'clock in the evening, on the Pennsylvania avenue, and nearly half a mile from the capitol, and on the opposite side of the avenue from where Mr. Stanbery's boarding-house is situated; and, at the time of this occurrence, he was neither seeking for, nor expecting, the said Stanbery. The accused denies that he intended to commit, or that he believed he was committing, any contempt towards the house of representatives, or any breach of its privileges, or of the privilege of any of its members. He denies that the act complained of constitutes any such contempt or breach of privilege, and is prepared to justify his conduct, so far, at least, as the rights and privileges of this house, and its members, are concerned, by proof.

2. To the second, he answered: "I consider the answer already rendered to the first interrogatory, as embracing an answer to the second." After examining witnesses, and hearing the argument of the accused, by his counsel, the house of representatives, on the 11th of May: "Resolved, that Samuel Houston has been guilty of a contempt and violation of the privileges of this house." "Resolved,

that Samuel Houston be brought to the bar of the house, on Monday next, at 12 o'clock, and be there reprimanded by the speaker, for the contempt and violation of the privileges of the house, of which he has been guilty, and that he be then discharged from the custody of the sergeant-at-arms."

On Monday, the 14th of May, when the accused was brought to the bar of the house, to hear his sentence, and receive his reprimand from the speaker, he had leave to present the following paper, which was ordered to be entered upon the journal of the house: "The accused, now at the bar of the house, asks leave respectfully to state, that he understands he is now brought here to receive a reprimand from the speaker, in execution of the sentence pronounced upon him. Were he to submit, in silence, to such a sentence, it might imply that he recognized the authority of the house to impose it. He cannot consent that it shall be thus implied. He considers it a mode of punishment unknown to our laws, and, if not prohibited by the constitution, as an 'unusual punishment,' yet, inconsistent with the spirit of our institutions, and unfit to be inflicted upon a free citizen. He thinks proper to add, in making this declaration, that he has been unwilling further to trouble the house; and, although he believes the whole proceedings against him, as well as the sentence he now objects to, unwarranted by the constitution of his country, yet circumstances may exist to justify or excuse a citizen in determining, (as he has done on this occasion,) to suffer in silent patience, whatever the house may think proper to enforce." The speaker then proceeded to execute the sentence of the house, by reprimanding the accused; in doing which, he stated the offence to be "a violation of the rights and privileges of the house of representatives, in having offered personal violence to one of its members, for words spoken in debate." The accused was then conducted from the bar of the house, and discharged from the custody of the sergeant-at-arms.

The first question which arises, in this case, is, whether this conviction and judgment of the house of representatives are a bar to the present prosecution for an assault and battery. Upon the plea of autrefois acquit, or autrefois convict, it must appear that the crime for which the defendant was first prosecuted, and of which he was convicted or acquitted, was the same for which he is now prosecuted. 1 Chit. Cr. Law, 453. And the criterion of identity of crimes, is, whether the facts charged in one indictment would have been sufficient to justify a conviction and judgment upon the other, by the court in which the first conviction was had. For, although the facts charged in the second indictment constitute a part of the matter necessary to support the first, yet, if the facts averred in the second indictment are sufficient, of themselves, to constitute a crime, and the first court has not jurisdiction of the

crime thus charged in the second indictment, neither a conviction nor an acquittal upon the first indictment will be a bar to the second. It is true, that, upon an indictment for murder, a general acquittal or conviction is a bar to a subsequent indictment for manslaughter, upon the same killing. So, an acquittal or conviction, upon an indictment for petit treason, is a bar to a subsequent indictment for murder. So, upon an indictment of grand larceny, a general acquittal or conviction is a bar to a subsequent indictment for petit larceny, for the same taking. But the reason, in all those cases, is, that the defendant may, upon the first indictment, be found guilty of, and punished by that court for, the offence charged in the second. And the reason why he may be so found guilty and punished by that court, upon the first indictment. is, that the nature of the offence is the same, and the only difference is in the degree of punishment, the court having jurisdiction of both. But, in the present case, the house of representatives, upon this charge of violating the privileges of the house, could not, if they had found the accused not guilty of the breach of privilege, have proceeded to find him guilty of a simple assault and battery, and to punish him for that offence. It had no jurisdiction of the offence charged in the present indictment. It has not assumed any such jurisdiction. It has professed to act only in vindication of its own privileges; and, although the assault and battery were given in evidence, as a part of the facts to establish the charge of a breach of privilege, it did not constitute the offence for which he was tried.

It is unnecessary, in this view of the case, for this court to give an opinion whether the house had jurisdiction, as far as they claimed and exercised it. For, if, as the accused contended, up to the last moment of his trial, the house of representatives had not that jurisdiction, it is clear that their sentence is no bar to the present prosecution; and, if they had that jurisdiction, it does not at all interfere with the jurisdiction of this court, upon the charge of a simple assault and battery, without the allegation of any fact to justify the jurisdiction exercised by the house. The opinion, thus expressed by this court, upon this part of the case, is corroborated by that of the late Chief Justice Parsons, of Massachusetts, in the case of Coffin v. Coffin, 4 Mass. 34, 35. That was an action of slander. The defendant pleaded his privilege, as a member of the house of representatives of Massachusetts, alleging that the words were spoken in deliberation in the house. The chief justice, in considering the objection of the danger of conflicting jurisdictions, said: "I consider the house of representatives, not only as an integral part of the legislature, and as an essential part of the two houses in convention, but also as a court, having final and conclusive cognizance of all matters within its jurisdiction, for the purposes for which it

was vested with jurisdiction." "As to contempts, the house proceeds against the offender, to punish the contempt. Courts of law proceed to punish offences against the state, and to redress private wrongs." "The same act may be a contempt against the house, an offence against the state, and an injury to an individual; and, in all these respects, proceedings may be had against the offender." See, also, Starkie. Sland. & L. 162. "Let me illustrate the subject by supposing a case or two. A member is assaulted in the town in which the house is in session, and is cruelly beaten for words spoken in the house, in the execution of his duty. The house may proceed against the assailant for a contempt; and cannot the member prosecute him at law for damages? And may not the grand jury indict him for a breach of the peace? And neither can the proceedings of a court of law control the proceedings of the house; nor can the proceedings of the house control the courts of law. The judgments of each court, whatever may be the result, can be executed without any interference. Suppose a public officer indicted for extortion, and. upon trial, acquitted at law, cannot he afterwards be convicted by the senate on an impeachment? Both judgments may be executed without interference. The power of the senate is censorial, and exercised to preserve purity in office."

Upon the whole, this court is of opinion that the conviction and judgment of the house of representatives, upon the charge of a violation of its privileges, is not a bar to the present prosecution for the assault and battery. The defendant having submitted to the court, under the act of Maryland, 1793 (chapter 57, § 19), has thereby so far admitted the offence charged. as to render himself liable to the costs of prosecution. The courts of Maryland, as well as this court, have always considered such a submission as amounting to a plea of "guilty," and that nothing remained for the court to do, but to declare the punishment; and, in order to guide the court, in its discretion, in cases where the punishment is discretionary, the court will, in general, examine the witnesses. Instead of doing this, in the present case. we have been referred to the evidence taken on the trial in the house of representatives. We have examined that evidence, and in making up our judgment as to the sentence we shall pronounce, we have thrown out of view whatever relates to the violation of the privileges of the house. We cannot, however, forget the station in life which has been heretofore occupied by each of the parties; the one a representative in congress, and the other late governor of one of these United States. To such stations we look for examples. not only of good order and submission to the laws, but of that self-control and government of the passions which are necessary to the peace of

society. The tone given to society, by the example of such men, is highly important, whether for good or for ill. If such men can indulge their passions with impunity, how much more excusable are the ignorant and the uneducated. The law, it is true, looks in mercy upon the infirmity of human nature; but it is only in those cases where the excitement is sudden, and the act follows the provocation, before reason and conscience have time to interfere. But when the passions have had time to cool, and the party has had leisure to consult his judgment and his conscience, and he still entertains a cool and deliberate purpose of revenge, that revenge is no longer entitled to the name of human infirmity; but, in law, takes the name of malice prepense; that malice which converts manslaughter into murder, whatever may have been the original provocation. That the defendant coolly and deliberately meditated the kind of revenge that he took, cannot be doubted from the evidence, nor that the battery was very severe. It is possible that some part of the severity of the beating may have been the consequence of a belief of the defendant, that the party assaulted was armed with deadly weapons, and that it was necessary on the part of the defendant, to be sudden and severe in his attack. to prevent the other from using those weapons. And when the defendant, in fact, found that the other not only had a deadly weapon, but attempted to use it with effect, a new and sudden excitement might have been created, which, with the increased belief that the party assaulted had another deadly weapon, might have led the defendant to inflict a more severe battery than he, at first. contemplated; and may account for some part of the severity, without attributing it to the original malice. Although the original provocation can be no justification of this breach of the peace, yet it ought to be taken into consideration in deciding upon the punishment. We have no means of knowing, judicially, whether the charge supposed to be insinuated in the speech, be true or false. Fraud is not to be presumed; and every man is supposed to be innocent, until proved to be guilty. The charge, if not true, could not fail to wound the feelings of an innocent man. If the battery had taken place immediately upon the first provocation. this consideration would have been of more avail. But, as it is, it has been allowed all the weight which it ought to have.

Upon the whole, then, considering the situation of the parties, their high standing in society, the original provocation, the deliberate revenge, the great outrage upon the public peace, the severity of the battery, and the mitigating circumstances before mentioned, the sentence of the court is, that the defendant. Samuel Houston, pay a fine of five hundred dollars, and the costs of this prosecution.