CUMMINGS and others *vs.* BANKS, administrator of Watt.

Where a bill was filed by legatees under the will of McP., who died in the island of Jamaica, against B., to reach a sum of money in his hands as administrator with the will annexed of W. who was the executor of McP., B. having been appointed such administrator by the surrogate of New-York; *Held* that a decree obtained by the plaintiffs, in the high court of chancery in Jamaica, against the executors of W. settling their rights under McP.'s will, and the liability of W., was *prima facie* evidence in their favor against B. as an ancillary administrator, and was to be deemed right until the contrary was established; on the principle that the point involved had already been decided between the parties, or their privies, by a court of competent jurisdiction.

*Held also* that B. was not an independent administrator, nor yet a mere trustee for the *cestuis que trust* under the will of W., but was ancillary to the foreign executor, and was bound, after paying such debts as might be established in our tribunals, to remit the funds in his hands, to the foreign executor, for the purposes of the will; and that in a suit by legatees of McP. to reach those funds, it was not necessary to bring in as parties, all persons—whether creditors or legatees—who might be ultimately interested in the distribution of the fund.

IN EQUITY.   The plaintiffs, residents in England, were the residuary legatees under the will of Hugh Gray McPherson, who died in the island of Jamaica on the 22d of March, 1835, of which will Robert Watt of that island, and others, were nominated executors. Watt alone qualified as executor and filed his inventory, which showed the property left by the testator to amount to $45,748,36. The testator, in his will, directed that all moneys due to him should be funded in the United States, Great Britain, or Jamaica; instead of which Watt used the money in his business as a merchant, so that when he died, on the 10th of January, 1841, he had upwards of $30,000 of the

testator's property thus mixed up with his own. Watt left a will, appointing James Rait and wife, Duncan Robertson, and others, of the island of Jamaica, executors and trustees thereof. Four of them qualified as such, but the property finally came into the possession of two of them, Duncan Robertson and Elizabeth Watt, among which was $44,770 belonging to Mc-Pherson's estate. In April, 1842, the plaintiffs in this suit filed a bill in the high court of chancery of the island of Jamaica, against Duncan Robertson and Elizabeth Watt, as the executor and executrix of Robert Watt, praying an account of the estate of McPherson in their hands, and a distribution of it among those entitled. A final decree was entered in that suit, the defendants therein appearing, by which it was declared that there was due from Robert Watt to the McPherson estate $82,324,60, and ordering that his executor and executrix should pay to the plaintiffs in this suit, for their distributive share thereof, £6772 10 8 sterling. On that decree an execution was issued, but nothing was collected thereon. Robert Watt, at the time of his death, owned a large personal estate in the United States, and under a power of attorney to him from the executors in Jamaica, the defendant Banks was appointed by the surrogate of New-York, administrator of Robert Watt with the will annexed, and as such there came into his hands over $40,000. The bill insisted that the decree in Jamaica was prima facie evidence in the plaintiffs' favor, of their right to be paid out of that sum, and prayed for a decree accordingly. The answer admitted the defendant's appointment as administrator and his receipt as such of $71,596,10, belonging to R. Watt's estate, but insisted that that amount was now in his hands as trustee for the cestuis que trust under Robert Watt's will, and not as administrator, in consequence of a decree of the surrogate of New-York. The answer also claimed that the decree in Jamaica was not binding on the defendant, nor prima facie evidence of a debt due by the defendant as administrator to the plaintiffs. The answer set out the will of R. Watt, showing a devise of his personal property and a large real estate in Jamaica, to various persons and for sundry trusts

therein mentioned, and stated that the defendant, as adminis-
trator, filed his inventory with the surrogate of New-York, and
on the 25th of July, 1845, obtained a decree from that officer
for a final settlement of his accounts, declaring that he had
$56,000 in his hands applicable to the purposes of the will of
Watt, and directing a pro rata payment thereof upon the lega-
cies therein mentioned, and which amounted to the sum of
$168,720, besides arrears of interest amounting to $43,946.
The answer insisted that that decree was a final adjudication
in favor of the legatees, and that, at all events, the plaintiffs
were not entitled to any decree in this suit without making the
legatees under Watt's will parties. The cause came on to be
heard on bill and answer, upon the two questions, whether the
decree in Jamaica was prima facie evidence in this suit, and
whether the legatees ought to be made parties.

    *T. Sedgwick*, for the plaintiffs.

    *M. Hoffman*, for the defendant.

    EDMONDS, J. It is not questioned, in this suit, that the high
court of chancery in Jamaica had jurisdiction over the cause,
the thing, and the parties, in the suit which these plaintiffs in-
stituted there. The question therefore is as to the effect to be
given here, to the decree which it pronounced thus within the
scope of its lawful authority. If the judgment was *in rem*, it
is well settled, that when pronounced in the *forum rei sitæ*, it
is of universal obligation as to all the matters of right and title
which it professes to decide in relation thereto. And by the
general consent of nations it is held to be absolutely conclusive,
(*Story on Conflict of Laws*, § 590,) qualified only with the lim-
itation that the foreign tribunal had, in the given case, jurisdic-
tion of the subject matter. (*Rose v. Himely*, 4 *Cranch*, 269.)
This principle is not confined to controversies in relation to
lands, or to admiralty cases, or to cases involving the personal
relations, but has been extended to the cases of creditors pro-
ceeding against the personal property of their debtor in the

hands of third persons.   (4 *Cowen*, 521, *note.   Holmes* v. *Remsen*, 20 *John*. 229.)   What was the suit in Jamaica but a proceeding against the property of the testator in the hands of the executors, in favor of those who had a claim as strong and as well founded in law as if they had been creditors?   And wherein, in principle, did the judgment which was pronounced against the executors in Jamaica, differ from that which is awarded against the debtor's debtor, in cases of garnishment? If the judgment is *in personam*, then it is admitted on all hands, says Judge Story, (*Conflict of Laws*, § 603, *and Kent's Com. vol.* 2, *p.* 120,) that it is prima facie evidence to sustain an action, and is to be deemed right until the contrary is established, and may be avoided for fraud or want of jurisdiction.   To this extent are all the authorities, from *Walker* v. *Witter*, (*per Lord Mansfield, Douglas' Rep.* 1,) down to the present; the only dispute having been whether it should not be conclusive; or if examinable at all, how far, and whether any farther than the point of fraud or want of jurisdiction.   In this controversy, I confess my inclination to side with Judge Story and Vice Chancellor Shadwell, in *Martin* v. *Nicolls*, (3 *Simons' Rep.* 458,) and, indeed, the English courts generally, at the present day, (1 *B. & Ad.* 459 ; 2 *Id.* 951,) and hold it conclusive, except of course, for fraud, mistake, or want of jurisdiction.   (*See* 1 *Greenl. Ev.* § 547 ; 1 *Stark. Ev.* 228 ; *Cowen & Hill's Notes to Ph. Ev.* 637.)   But all the American cases agree that where a foreign judgment comes incidentally in question it is conclusive.   The principle on which the rule is founded, namely, that the point has already been decided between the parties, or their privies, by a court of competent jurisdiction, and that future litigation would be useless and vexatious, is just as applicable to foreign as to domestic judgments.   But I do not know that it is necessary, in this case, to go the length of holding a foreign judgment to be conclusive; though if it were, I should be inclined to hold that as the better opinion in this country as well as in England.   For the decision of the point before me, it is enough that I hold the judg-

ment to be prima facie evidence; and on that point there is no room for doubt.

The next thing to consider is, how that rule applies to and affects this case. That depends on the true nature and character of the position which the defendant occupies; and ascertaining that, may determine the second question raised upon the argument, whether there is a defect of parties. Is he to be regarded as a trustee for the cestuis que trust named in the will of Watt, and for the purposes of the will? for so it is insisted on the part of the defendant; or as an administrator, independent in respect to the assets in his hands of any other administration of Watt's effects, or as administrator ancillary to the execution of the will by the executors and trustees named in it? The surrogate seems to have regarded him as an independent administrator with the will annexed, and to have ordered him to distribute the funds in his hands agreeably to the directions of the will, without reference to the powers, or duties, or action of the foreign executors. This may have been, and probably was, because his attention was not called particularly to that point. But it is easy to perceive that this was erroneous; because, by that course the legatees who were not before him, may be bound by a decree to which they were not parties; or they may receive their several legacies, (in whole or in part,) twice over; or they may receive them to the exclusion of the creditors of the decedent. To regard him as a naked trustee, with his power and character of an administrator entirely at an end, would be equally erroneous. His whole authority over the estate is derived from his appointment as administrator under the statute; and his functions as such certainly do not cease by his having rendered an account, and been ordered by the proper tribunal to pay out the funds in his hands. His character and functions as an administrator continue, at least until he has obeyed that decree. In one sense, it is true, he is a trustee; that is, because the money he has in his hands does not belong to him, but to some third persons, for whose benefit, or on whose behalf, he is to disburse it. But every administrator is in that sense a trustee, and that is be-

Cummings v. Banks.

cause he is an administrator, and his functions and responsibilities continue until he is finally discharged. If a mere naked trustee, for whom is he such? for the legatees named in the will? for the foreign executor, or for the testator's creditors? If for the creditors, for which; those in this country, or those abroad? It seems to me that it is almost impossible for us, in this country, to answer these questions.

To regard the defendant either as a naked trustee for the legatees, or as an administrator independent of the foreign executors, necessarily involves the whole subject in embarrassments and difficulties. To regard him, however, as an administrator ancillary to the foreign executors, relieves it from those embarrassments and difficulties.

Then it becomes his duty, so far as he is an officer of this state, acting under our laws, to disburse the moneys he may receive, among the creditors of the decedent, citizens here or otherwise, who present their claims here and seek the aid of our tribunals to enforce their collection, and the surplus, if any, he is to send abroad to the foreign executor, who is alone, under the will, clothed with the trusts of the will, and who alone has full authority to execute them.

If the effects abroad were in the hands of an administrator there, an administrator here might properly be regarded as independent; each administering that part of the estate which he has in possession, and neither would be ancillary to the other. But that is not this case. The defendant derives his authority to intermeddle at all, in the first instance, from the executors abroad. He is appointed administrator with the will annexed, and for the purposes of the will; and his duty is, as soon as he has paid out such sums as by our laws are justly chargeable upon the funds in his hands, to remit the surplus to the foreign executors, for the purposes of the will. If he is trustee for any one, he is so for the creditors for the amount of the claims which they may seek to enforce in our tribunals, and for the foreign executor for the surplus. But he is still an administrator, ancillary to the foreign executor, for the purposes of the

will, yet with independent obligations to pay out here whatever our laws may decree in that regard.

This is his true character and position, as I gather it from the authorities. (*Dawes* v. *Head*, 3 *Pick. R.* 141. *Brodie* v. *Bickley*, 2 *Rawle's R.* 436.) And it necessarily follows that he is bound by a judgment against his principal abroad, as much as he would be by a judgment against his testator; and that in enforcing a claim against the estate through him as administrator, it is no more necessary than it would be in any ordinary collection suit against an administrator to bring in as parties all, whether creditors or legatees, who might be ultimately interested in the distribution of the fund in question.

There must, therefore, be a decree for the plaintiffs on both the points presented to me on this hearing.

