Coös, ⎱
June 3, 1902. ⎰

MacDonald & a. v. Grand Trunk Railway Co.

A judgment for the defendant on the merits, rendered by a foreign court having jurisdiction of the parties and the subject-matter, in a suit upon a cause of action arising within this state is a conclusive defence to a subsequent suit in this state between the same parties for the same cause of action.

The conclusiveness of a foreign judgment as a defence to a subsequent suit cannot be avoided on the ground that the adjudication contravenes our established policy, when it appears that the decision resulted from a failure of the parties to furnish information as to the settled law of this state, where the cause of action arose.

CASE, to recover the value of goods destroyed by fire through the defendants' negligence while in their possession as common carriers. The case was transferred from the November term, 1901, of the superior court by *Wallace*, C. J., upon the pleadings and facts agreed upon by the parties, as follows:

The goods in question were shipped upon the Allan steamship Sarmatian at Glasgow, Scotland, under a bill of lading which was made a part of the case, for transportation to Toronto, Canada. The goods were received by the defendants at Portland, Maine, for transportation upon the terms of the original bill of lading. While in transportation across this state they were destroyed by fire resulting from a collision caused by the defendants' negligence. The goods were insured with the Mannheim Insurance Company, which has paid the plaintiffs, MacDonald & Co., their value — $2,469.50. Prior to the commencement of this action, the consignees, who are residents of Toronto, and the insurance company brought suit before the high court of justice in the dominion of Canada against the defendants, in which the present plaintiffs claimed to recover of the present defendants for the loss of the goods in question; and in that action, after hearing, judgment was rendered in favor of the defendants. The high court of justice is a court of record of general jurisdiction. It had jurisdiction of the parties to the action and of the subject-matter of the case; and the judgment rendered was a judgment upon the merits of the issue presented, and is not reversed.

The defendants pleaded the judgment in bar of this action, and also pleaded that by the terms of the bill of lading they were protected from liability for loss from fire, whether due to their own negligence or otherwise, and from liability for any loss which

could be covered by insurance. The pleadings and record in the suit referred to were made a part of the case.

*Matthews & Sawyer*, for the plaintiffs.

*Clarence A. Hight* and *L. Leroy Hight* (both of Maine) and *Chamberlin & Rich*, for the defendants.

Parsons, J. The plaintiffs prior to the commencement of this suit voluntarily submitted the claim which they now make against the defendants — their right to damages for the negligent destruction of their property while in the hands of the defendants as common carriers — to a judicial tribunal established by the government of which they were citizens and to whose decrees they owe obedience. The tribunal to which they appealed was a court of record of general jurisdiction; it had jurisdiction of the parties and of the subject-matter of the controversy. Both parties appeared and were heard; the plaintiffs had full opportunity to present such matters of fact and to argue such propositions of law as they deemed essential to their case. The judgment was upon the merits and against the plaintiffs. It is not claimed that by any erroneous ruling of the court the plaintiffs were prevented from fully and fairly presenting their case, nor is it suggested that the court erred in its decision of the legal question which the parties considered decisive of their rights. No accident or mistake on the part of the plaintiffs in the presentation of their case is suggested. Fraud is not charged. It is apparent that if the plaintiffs' claims had been sustained in Canada, the defendants would have been bound by the result and would have been compelled to satisfy any judgment that might there have been obtained against them. Is there any reason why the plaintiffs, having compelled the defendants to litigate the claim made in this suit before a tribunal of the plaintiffs' selection, and having suffered defeat without fraud, accident, or mistake, and after a fair hearing by the results of which the defendants were necessarily bound, should not also be everywhere bound by the judicial determination which they invoked, and be estopped from presenting before any other tribunal the claim once judicially decided against them? The judgment in Canada was final and is not reversed. It is conclusive against the plaintiffs in their own country. As an expression of the will of the sovereign to whom their allegiance is due, they owe obedience thereto, abroad as well as at home. Upon every ground of natural right and justice, it would seem that they should be debarred from invading the courts of another country to retry a controversy settled against them at home.

Against the binding effect upon the plaintiffs here of the judgment in Canada, it is urged that in this court that judgment is a foreign judgment. " It is universally agreed that the laws of a state have, *ex proprio vigore,* no extra-territorial force." *Crippen* v. *Laighton,* 69 N. H. 540, 549; *Smith* v. *Godfrey,* 28 N. H. 379, 381, 382. But the courts of the state are open to others besides our own citizens (P. S., *c.* 216, *s.* 1); and the controversies our courts are called upon to determine are not limited to those which arise within this sovereignty or under its laws. The substance and effect of foreign laws are, therefore, subjects of frequent consideration. " There is, perhaps, no general principle of law better established than that the validity of a contract is to be decided by the law of the place where the contract is made. If valid there, it is valid elsewhere; but if void or illegal by the law of the place where made, it is void everywhere. . . . But there are some exceptions to this rule, and among them is this: that no nation is bound to recognize or enforce any contracts which are injurious to its own interests or to those of its own citizens, or which are in fraud of its laws." *Smith* v. *Godfrey,* 28 N. H. 379, 381. That the law of the country where a contract is made or to be executed is to be examined to ascertain what the agreement was which the parties made, is elementary. *Limerick Nat'l Bank* v. *Howard,* *ante, p.* 13; *New York Life Ins. Co.* v. *McKellar,* 68 N. H. 326, 328. " If there is a conflict between the *lex loci* and the *lex fori,* the former governs in torts the same as in contracts, in respect to the legal effect and incidents of acts." *Beacham* v. *Portsmouth Bridge,* 68 N. H. 382. If there is no ground of action in the sovereignty where the tort is alleged to have occurred, there is none anywhere. *Wilson* v. *Rich,* 5 N. H. 455; *Leazotte* v. *Railroad,* 70 N. H. 5, 6. To ascertain the rights resulting from acts done or omitted, attention must be paid to the circumstances under which the events took place; and one of the governing circumstances is the law of the place which characterizes the act. It is sometimes said that in such circumstances the courts of one country out of comity give effect to the laws of another (*Smith* v. *Godfrey, supra*), but a more exact view has been taken. " When the courts of one country consider the laws of another in which any contract has been made, . . . in construing its meaning, or ascertaining its existence, they can hardly be said to act from courtesy, *ex comitate;* for it is of the essence of the subject-matter to ascertain the meaning of the parties, and that they did solemnly bind themselves; and it is clear that you must presume them to have intended what the law of the country sanctions or supposes; it is equally clear that their adopting the forms and solemnities

which that law prescribes shows their intention to bind themselves, nay more, it is the only safe criterion of their having entertained such an intention. Therefore the courts of the country where the question arises resort to the law of the country where the contract was made, not *ex comitate*, but *ex debito justitiæ*; and in order to explicate their own jurisdiction by discovering that which they are in quest of, and which alone they are in quest of, the meaning and intent of the parties." *Warrender* v. *Warrender*, 2 C. & F. 488, 530. In like manner, when a right is claimed upon acts occurring in another country, courts look to the law of that country, not to extend the binding force of a foreign law beyond the territorial limits of the sovereignty to which it belongs, but to ascertain whether the right claimed exists or not. It is not the foreign law, but the rights acquired under it, which are enforced by the courts of another country; and this is true whether the question be one of contract, tort, or *status*. As the will of the sovereign expressed in general law can of itself have no exterritorial force, the same will expressed in concrete form in a judgment between two suitors can have no greater effect. A plaintiff cannot here have execution upon a foreign judgment, nor a successful defendant have execution for costs, in the absence of legislative direction to that effect. The question is not of the enforcement of the foreign judgment; but it is: What are the rights of the parties? The particular law declared by the judgment is evidence of the rights now in controversy, as would be the general law if the dispute related to matters which had not passed into judgment.

The plaintiffs, MacDonald & Co., contracted with the Allan Steamship Company for the transportation of certain goods from Glasgow, Scotland, to Toronto, Canada. One of the stipulations of the written contract, called the bill of lading, provided that the carriers should not be liable for loss from fire, even if resulting from their own negligence. The goods were delivered to the Grand Trunk Railway Company in Portland, Maine, who accepted them upon the terms of the original bill of lading. While in transport across this state, the goods were destroyed by fire through the negligence of the defendant railroad. The claim in this suit is, that the stipulation releasing the carrier from liability for loss through negligence is void by the law of this state, and that, as the loss occurred through the defendants' tort in this state, the plaintiffs can maintain an action for the value of the goods. Assuming this claim to be sound without examination, and that upon the occurrence of the loss the plaintiffs had a valid claim against the defendants for the amount of it, it does not necessarily follow that they can now maintain an action for it. By

contract subsequently made in Canada they could have released the defendants from liability. By an arbitration, and award against them, their claim might be destroyed. Had either event taken place in Canada, the question would be: Was the contract, or arbitration and award, valid by the laws of Canada? The action for the tort being transitory, the Canadian court had jurisdiction of the claim and to determine, if required, the law of New Hampshire, which apparently was the law of the case. *Hughes* v. *Railroad* (Pa.), 51 Atl. Rep. 990. The fact that the defence set up is a legal adjudication instead of a contract of release, or an arbitration and award, does not alter the legal question which, in respect to the legal effect and incidents of the acts of the parties, is determined by the law of the place. It is conceded that the judgment was upon the merits, is final, valid, and unreversed, and that by the law of Canada it conclusively establishes the defendants' right to protection against further litigation of the same claim. This right resulting from the plaintiffs' acts is not limited by territorial lines, nor destroyed by the plaintiffs' selection of another sovereignty as the place for the renewal of litigation. This right of the defendants depends, not upon the exterritorial force of the Canadian judgment, but (1) upon the "universal law of justice . . . which binds one to submit to a final decision resulting from his own acts" (*Fisher* v. *Fielding*, 67 Conn. 91,— Dis. Op., *Hamersley, J., p.* 132; *Schibsby* v. *Westenholz*, L. R. 6 Q. B. 155, 161; *Williams* v. *Jones*, 13 M. & W. 628, 633. The principle is that of a voluntary submission to arbitration. *Erle,* C. J., *Barber* v. *Lamb*, 8 C. B. N. S. 95, 100); (2) upon the plaintiffs' obligation of obedience to the government of which they are citizens, "for it is a part of the original contract entered into by all mankind who partake of the benefits of society, to submit in all points to the municipal constitutions and local ordinances of that state of which each individual is a member" (3 Bl. Com. 158); and (3) upon the fundamental principle of the common law, that a matter once litigated and determined before a court of competent jurisdiction shall not again be controverted before any court. "The law as laid down in the *Duchess of Kingston's Case* seems to be the law today: that a judgment of a court of competent jurisdiction directly upon the point involved is as a plea, a bar; as evidence, conclusive." *New York etc. R. R.* v. *McHenry*, 17 Fed. Rep. 414, 417.

"The maxim, *Interest reipublicæ ut sit finis litium*, is not restricted in its application to controversies or suits originating in the state before whose courts it is invoked. It does not rest on the excellence of any particular system of jurisprudence. It governs wherever the parties come, in the last resort, before a court con-

stituted under an orderly establishment of legal procedure. No one who has been, or could have been, heard upon a disputed claim, in a cause to which he was duly made a party, pending before a competent judicial tribunal, having jurisdiction over him, proceeding in due course of justice, and not misled by the fraud of the other party, should be allowed, after a final judgment has been pronounced, to renew the contest in another country. The object of courts is hardly less to put an end to contests than to decide them fairly." *Fisher* v. *Fielding*, 67 Conn. 91, 110. The case from which this quotation is taken was a suit in Connecticut to recover the amount of an English judgment rendered by default, service having been made upon the defendant while temporarily in England. By the majority of the court the English judgment was held conclusive. *Hamersley*, J., dissented solely upon the ground that by a default the matter in controversy was not *res judicata* in the sense that it had in fact been submitted by the parties to a court, and heard and determined. The following is from the dissenting opinion in the same case (*pp.* 130, 131): "The principle broadly stated is this: a claim once submitted by the parties to a court of competent jurisdiction, fully heard, determined, and decided by that court, shall not thereafter be controverted between the same parties. This principle is entirely distinct from the right given by law to a party to a judgment to ask the state to exercise its sovereign power in compelling obedience to that judgment. It is simply a principle of jurisprudence firmly established in our municipal law, and based on considerations so general in their application, so clearly equitable and essential in any administration of justice, that it may fairly be called a universal principle of jurisprudence. This principle does not, and from its very nature cannot, depend upon the particular court whose judicial action has been invoked, so long as its jurisdiction is competent and its judgment final. It applies wherever the parties have so submitted their claims to a final decision by a court of competent jurisdiction, whether that court be inferior or superior, of law or equity, domestic or foreign. . . . Whether we call this law a rule of comity of nations, is immaterial to the matter in hand. It is a part of our law, and derives its force from that fact; and foreign laws, as conclusive evidence of the legal effect of acts done under them, are received by virtue of our law, with the vital qualification stated by Story: ' unless they are repugnant to its policy or prejudicial to its interest.' . . . In assuming that the real obligations of the parties are controlled by the fact that they arose or were undertaken with reference to the law prevailing where their acts were done, our courts do not assume to execute a foreign law, although

the obligation they enforce as legal under our own law may also find its source in the command of a foreign sovereign; they treat the foreign law as a fact essential, in connection with other facts, to ascertain what .the parties really meant by what they have done; and if in receiving and weighing such fact they may also theoretically enforce the will of a foreign sovereign, it is only as an incident to the exercise of the judicial power vested in the courts, and does not offend the sovereignty of the state where such law may be proved as a fact."

It is urged that a foreign judgment, though admissible in evidence, is not conclusive, but is merely *prima facie* evidence. Support for this proposition is to be found in early English cases and *dicta*, where the judgment was offered as evidence of debt in an action to recover the amount found due by the former judgment. In *Phillips* v. *Hunter*, 2 H. Bl. 402, 410 (1795), a distinction was made by Lord Chief Justice *Eyre* between cases where a judgment was brought before an English court upon the application of a successful party to enforce and obtain the fruits of it against the defendant, and those cases where the defendant sets up the foreign judgment as a bar to a new suit with reference to the former subject-matter. "It is in one way only," he said, "that the sentence or judgment of the court of a foreign state is examinable in our courts, and that is, when the party who claims the benefit of it applies to our courts to enforce it. . . . In all other cases we give entire faith and credit to the sentences of foreign courts, and consider them as conclusive upon us." The latter statement does not appear to have been questioned in England. *Burrows* v. *Jemino*, 2 Stra. 733; *Boucher* v. *Lawson*, Cas. t. Hard. 85, 87, 89; *Barber* v. *Lamb*, 8 C. B. N. S. 95; *Ricardo* v. *Garcias*, 12 C. & F. 368. The distinction has, however, been abandoned, and foreign judgments are not now held examinable there to the extent suggested by Chief Justice *Eyre*. *Bank of Australasia* v. *Nias*, 16 A. & E. 717; *Scott* v. *Pilkington*, 2 B. & S. 11; *Godard* v. *Gray*, L. R. 6 Q. B. 139. .

At the time of the Revolution it appears to have been understood as the law of England that a judgment offered as evidence of a debt, in an action by the plaintiff to obtain its fruit, was merely *prima facie* evidence and examinable upon the merits. *Hilton* v. *Guyot*, 159 U. S. 113, 187. This view was followed by the early American cases, among which is the case of *Robinson* v. *Prescott*, 4 N. H. 450, and to this view is to be ascribed the expressions found in *Bryant* v. *Ela*, Smith (N. H.) 396, 404; *Thurber* v. *Blackbourne*, 1 N. H. 242, 243; *Taylor* v. *Barron*, 30 N. H. 78, 95. The American cases, however, adopted in full the distinction made in *Phillips* v. *Hunter*, *supra*, which, it is said by

Story, "has been very frequently recognized as having a just foundation in international justice," upon the ground that where a defendant sets up a foreign judgment as a bar to the proceedings, "if it has been pronounced by a competent tribunal and carried into effect, the losing party has no right to institute a new suit elsewhere, and thus to bring the matter again into controversy; and the other party is not to lose the protection which the foreign judgment gave him. It is then *res judicata*, which ought to be received as conclusive evidence of right; and the *exceptio rei judicatæ* under such circumstances is entitled to universal conclusiveness and respect." Sto. Conf. Laws, *s*. 598; 2 Kent 120. See Big. Est. 196–203; Freem. Judg., *s*. 592; Black Judg., *s*. 228; Dicey Conf. Laws 417.

It has been said that "all the American cases agree that where a foreign judgment comes incidentally in question it is conclusive" (*Cummings* v. *Banks*, 2 Barb. 602, 605); and that "it is an established rule that a foreign judgment, when used by way of *defence*, is as conclusive to every intent as those of our own courts." *Griswold* v. *Pitcairn*, 2 Conn. 85, 92. "Foreign judgments are never re-examined, unless the aid of our courts is asked to carry them into effect by a direct suit upon the judgment. The foreign judgment is then held to be only *prima facie* evidence of the demand; but when it comes in collaterally, or the defendant relies upon it under the *exceptio rei judicatæ*, it is then received as conclusive." *Kent*, C. J., *Smith* v. *Lewis*, 3 Johns. 157, 169; *Monroe* v. *Douglas*, 4 Sand. Ch. 126, 181; *Williams* v. *Preston*, 3 J. J. Marsh. 600.

*Burnham* v. *Webster*, 1 W. & M. 172, appears to be the only American case which questions the conclusiveness of a foreign judgment offered as a defence. The general expressions used by the distinguished author of the opinion in that case, if carried out, would render a foreign judgment of little value, and would, it has been said, "destroy the force and effect of judicial proceedings, and make the judgments of a foreign tribunal, no matter how high its rank or how binding its decisions within its own jurisdiction, of little greater effect than the original contract or promise sued upon." *McMullen* v. *Ritchie*, 41 Fed. Rep. 502,— 8 L. R. A. 268. But the precise point in the case to which the decision is expressly limited is not in opposition to, but in support of, the general ground upon which the foreign judgment has been held conclusive. In that case, in answer to a suit upon a promissory note, the defendant offered a judgment in a suit in New Brunswick, in which the plaintiff declared upon the note then in suit with others and had judgment only for the others. The plaintiff offered to prove that, before the former case was submitted to the jury, the note then in

suit was by agreement withdrawn and was not submitted to the jury, but by mistake the counts upon this note were not struck from the declaration before judgment.   The evidence, if true and admissible, established that the former judgment was not an adjudication as to the note in suit, and the only point in fact decided was that the plaintiff could show what was in fact adjudicated in the former suit.   *Hohner* v. *Gratz*, 50 Fed. Rep. 369, is within the general exception that rights under a foreign law will not be enforced to the injury of the citizens of the forum.   The subject-matter and the parties in the two suits were different, and the principle of *res judicata* did not apply.   20 L. R. A. 677, note.

Both upon reason and all the authorities, it is clear that a plea of former adjudication, except as a merger of a cause of action, is sustained by proof of such adjudication in a foreign as well as a domestic tribunal.   The supreme court of the United States, by a bare majority, has considered that the effect to be given to a foreign judgment is determined by the treatment given our judgments in the courts of the country whose judgment is under consideration; that courts are required to do, not as justice and reason require, but as they are done by.   *Hilton* v. *Guyot*, 159 U. S. 113.   But this question does not arise here, because the courts of Ontario hold judgments of courts of the United States conclusive upon the merits.   *Ritchie* v. *McMullen*, 159 U. S. 235; *Fowler* v. *Vail*, 27 U. C. C. P. 417, — 4 Ont. App. 267.   The contrary contention of the plaintiffs is founded upon earlier cases based upon a statute (23 Vict., *c.* 24, *s.* 1) which was repealed by 39 Vict., *c.* 7 (1875–76).   *Fowler* v. *Vail, supra.*

The effect of a foreign judgment upon the same subject-matter, as establishing the defence of *res judicata*, is the only question now involved.   The tendency of the later American cases seems to be to follow the modern English doctrine as to foreign judgments generally.   *Rankin* v. *Goddard*, 54 Me. 28; *S. C.,* 55 Me. 389; *Fisher* v. *Fielding*, 67 Conn. 91; *Lazier* v. *Westcott*, 26 N. Y. 146; *Dunstan* v. *Higgins*, 138 N. Y. 70,— 20 L. R. A. 668; *Baker* v. *Palmer*, 83 Ill. 568; *Roth* v. *Roth*, 104 Ill. 35; *Hilton* v *Guyot, supra; McMullen* v. *Ritchie, supra;* 5 Eng. R. C. 746; 1 Freem. Judg., *s.* 597.   To what extent the doctrine of these cases is the law of this state, need not now be determined.

It is stated as a fact agreed that the judgment pleaded was upon the merits of the issue presented.   The issue presented in that case, as in this, was the defendants' liability for the destruction of the plaintiffs' property.   It may be the fact was agreed with a different understanding by one of the parties, at least, as to what was the issue presented by the case.   But regardless of the agreed fact, it is apparent from the facts stated that the judgment

was upon the merits and was an adjudication of the plaintiffs' right to recover the damages claimed in this suit. The plaintiffs were not defeated because the action which they brought was not a legal remedy for the wrong claimed (*Kittredge* v. *Holt,* 58 N. H. 191), nor upon the ground that the form of their action was misconceived (*Meredith etc. Ass'n* v. *Company,* 67 N. H. 450), but upon the merits of their claim. The matter upon which they proceeded by their declaration, and which the defendants denied by their plea, was the defendants' liability for the loss complained of. This was the issue. *King* v. *Chase,* 15 N. H. 9; *Metcalf* v. *Gilmore,* 63 N. H. 174. The decision of this question, when the same question as to the same goods is again raised, concludes all matters of fact or law which were or might have been proved or urged in support of or against the decision reached. *Metcalf* v. *Gilmore, supra,* 189.

If the plaintiffs, in the exigencies of their case as then presented, and in view of their claim that the question was determined by the Canadian statute, thought it wise not to offer proof of New Hampshire law, they must abide by the result so long as that judgment remains unreversed. If the result was due to accident, mistake, or misfortune, which is not claimed, the proper tribunal in which relief should be sought would seem to be the high court of justice of Ontario.

A foreign law will not be given effect when it contravenes some established and important policy of the state of the forum, or would involve injustice and injury to the people of the state whose courts are appealed to. Min. Conf. Laws 9; Sto. Conf. Laws, *s.* 38. It is urged that the policy of this state does not permit common carriers to release themselves from liability for negligence. Assuming this to be so, it only follows that in rendering the judgment a mistake was made as to the law of New Hampshire, which does not detract from the force of the judgment as an adjudication, especially when, as in this case, the court is led into error by the failure of the complaining parties to inform it as to the foreign law. *Godard* v. *Gray,* L. R. 6 Q. B. 139,— 5 Eng. R. C. 726. A domestic judgment pleaded could not be answered by an averment that it was founded upon a mistaken admission of the parties as to the law. There is no reason why such an averment should avail against a foreign judgment. The plaintiffs are not citizens of this state. The defendants are sued here because found here. Their presence in this state is authorized by law. In a sense, they are citizens here. Public policy, which forbids an application of the principles of comity toward the subjects or laws of a foreign country to the injury of our own citizens, for this reason protects the citizens of the state from

repeated suits upon the same matter. A citizen who has been compelled to litigate a matter in a foreign country, and take there the chance of an unfavorable decision, ought not to be again required to litigate the same question at home. A rule of public policy for the protection of the citizen cannot properly be applied to do injustice to him.

Upon the question raised as to the validity of the contract releasing the defendants from liability for negligence, no opinion is expressed. The defendants' plea of former adjudication states a defence to this action. Upon the facts stated they are entitled to judgment.

*Judgment for the defendants.*

All concurred.