Hillsborough, }
June 6, 1916. }

MICHAEL AKSCYN & a. *v.* SECOND NATIONAL BANK OF NASHUA,

AND THE ROMAN CATHOLIC BISHOP OF MANCHESTER.

The legal title to funds donated by members of the Roman Catholic Church for the purchase of church property in this state, to be held upon certain terms, is in the Roman Catholic Bishop of Manchester, a corporation sole (Laws 1901, c. 232), and the funds are to be held by him subject to those terms which the donors or settlors of the trust have imposed.

Where, through ignorance and mistake as to a church rule requiring the legal title to church property to be held by its bishop, persons have made contributions for the purchase of church property upon the stipulation that the legal title thereto should be held otherwise, equity, upon a proceeding to which all the donors and the attorney-general are parties, will decree the proper return or disposition of any contributions donated upon a condition which cannot be performed.

The terms and limitations of a charitable trust cannot be conclusively decreed in a proceeding to which only the claimants of the legal title are parties; but a decree to protect the lawful trustee requires the joinder of the donors and the attorney-general.

To a suit by members of an incorporated religious society to enforce its rights, the association is a necessary party.

BILL IN EQUITY, filed September 2, 1910, by the plaintiff and thirteen others in behalf of themselves as members of the Lithuanian St. Cassimer Roman Catholic Society of Nashua, and of all other members who might wish to join as parties plaintiff, alleging the deposit by the society with the bank of the sum of $7,116.26 which the bank, though requested, refused to pay to the society. The bank by its answer admitted the deposit, brought the money into court and asked that the Roman Catholic Bishop of Manchester and the Lithuanian St. Cassimer Catholic Church in Nashua be required to implead as to the ownership of the money. An order of notice to the bishop was issued, who appeared and filed an answer denying that the plaintiffs individually, or as a society, have any right to the money, and alleging that the money was raised by a committee for the purpose of paying off the debt upon certain church property formerly known as the Church of the Immaculate Conception in said Nashua, that a trust has been created and that the fund is a trust fund belonging to the parish, raised and contributed under the laws and rules of the Roman Catholic religion. The

plaintiffs filed a replication to the answer of the defendant bank, alleging that the money was raised upon the express condition that it should be used in the purchase of the Church of the Immaculate Conception, the title of the church to be in the name of the St. Cassimer Roman Catholic Society, that later this society was informed that the title could not be in the name of the society but must be in the name of the Roman Catholic Bishop of Manchester and asked that the money be returned to the society, discharged of all claims of the bishop.

The case was heard by a master who reported the facts and recommended a decree that the money is the property of the Roman Catholic Bishop of Manchester as a corporation sole in trust for the St. Cassimer Roman Catholic Society in Nashua, N. H., upon the condition that the church property, when paid for, should be held by the bishop in trust for the sole use of the society, following in the decree substantially the provisions of s. 6, c. 232, Laws of 1901, by which it is provided that the bishop as a corporation sole shall be regarded as holding, in trust, the property of each parish. The court, *Kivel*, J., ordered a decree as recommended by the master, and the plaintiffs, Akscyn and others, members of the society, excepted. Transferred from the January term, 1915, of the superior court.

The material facts reported by the master are as follows: Previous to January 12, 1908, the plaintiffs, who are Lithuanians, and several hundred of their countrymen had been holding religious services as Roman Catholics in the basement of the church of the Immaculate Conception on Temple street in Nashua. The church building was then occupied by a congregation of Irish Roman Catholics who were erecting a new church building on Spring street. The legal title to the church buildings then was and now is in the Roman Catholic Bishop of Manchester, a corporation sole, in trust for the Church of the Immaculate Conception, Laws 1901, c. 232. The property was mortgaged to the Amoskeag Savings Bank to secure an indebtedness amounting to $22,500. As the Irish Catholics were soon to move to their new building, a meeting of the Lithuanian Catholics was called to consider the subject of getting a church building for their use. At this meeting the plaintiffs and others organized themselves into an association, known as the St. Cassimer parish in Nashua. The Lithuanian priest told those present, over one hundred persons, that as the new church would be finished in a short time, the old church could be bought for $22,500. He then explained in a general way the customs, usages and the law

relating to the holding of the property of Roman Catholic congregations in New Hampshire. The members present then decided to raise the money to buy the church, and some money was then raised and subscribed. After the meeting, subscriptions were received from time to time until the total sum represented by the deposit in the bank was collected. The Lithuanian priest subscribed $500; many people brought money to his house; collections were taken in the church and money was raised by entertainments. Some contributors were not members of the parish. April 6, 1908, $723.94, the amount then collected, was deposited in the defendant bank in the names of the Lithuanian priest, Anthony Uzdan and Thomas Akscyn as trustees of the Lithuanian St. Cassimer Roman Catholic Church in Nashua. June 13, 1908, when the deposits amounted to $2,686.28, the committee who were engaged in raising the money were informed by the bishop that he could do nothing unless the money should be turned over to him or deposited in his name, and that all money collected for the purpose of having or buying a Roman Catholic church must be collected and stand in the name of the Roman Catholic Bishop of Manchester. Accordingly, upon the request of two of the trustees, the Lithuanian priest and Uzdan, the bank indorsed the bank book as payable only to the bishop. December 22, 1909, the deposit then amounting to $7,116.26, the right of the bank to pay to the bishop was questioned by members of the society, and subsequently these proceedings were instituted.

The plaintiffs and most of the members of the society understood that, when the money should be paid, the title to the church buildings would be in the name of the St. Cassimer Roman Catholic Society, but after the order was given to make the money payable to the bishop, the society was informed that the title could not be in the name of the society but must be in the name of the bishop.

*Ivory C. Eaton* and *Robert L. Manning* (*Mr. Manning* orally), for Akscyn.

The donations constituted a trust fund, and the legal title is in the plaintiff Akscyn and his co-trustees, for the benefit and upon the conditions named by the donors; *Downes* v. *Society,* 63 N. H. 151; *Krauczunas* v. *Hoban,* 221 Pa. 213,—70 Atl. Rep. 740, 745; *Sohier* v. *Trinity Church,* 109 Mass. 1, 23; and, the project not having been completed within a reasonable time, the contributors are entitled to a return of their money. *Stevens* v. *Corbitt,* 33 Mich. 458; *In re Baird's Estate,* 13 Phila. 241; *Hennessey* v. *Walsh,* 55 N. H. 515; *Carter* v. *Carter,* 14 Pick. 424; 37 Cyc. 501.

*George B. French*, for the Second National Bank.

*Doyle & Lucier (Mr. Lucier* orally), for The Bishop of Manchester.

PARSONS, C. J.   By the statute, *c.* 232, Laws 1901, the Roman Catholic Bishop of the diocese of Manchester and his successors in office are created a corporation sole under the name of the Roman Catholic Bishop of Manchester with power to take, hold and manage property for the purposes of the Roman Catholic church.   The sixth section of the chapter is: "It is also hereby provided that said corporation shall be regarded as holding, in trust, the property of each parish, in said diocese, for the use and benefit of the members of such parish; and said corporation shall not convey by mortgage, or otherwise pledge, the property of any parish for the debts, or other obligations, of any other parish within the diocese; the property of each parish thereof to be only liable and subject to a mortgage or pledge to secure or satisfy debts and obligations incurred and created for the use and benefit of such parish."   The case mentions the "St. Cassimer parish in Nashua," an association organized by the plaintiffs and others, and the "Lithuanian Roman Catholic Church in Nashua," and the suit is brought by the plaintiffs as members of the "Lithuanian St. Cassimer Roman Catholic Society of Nashua." Whether this distinction in nomenclature refers to different organizations does not appear in the case and is immaterial.   The only purpose of the St. Cassimer Society, so far as disclosed, is the raising, mainly by gifts, of the fund in dispute.   This fund is not the property of the society raising it, but is a trust fund, to be held by the proper legal trustee upon the trust for which it was given, which in general terms was the securing of church accommodations for the Lithuanian Catholic congregation heretofore accustomed to assemble in the basement of the Church of the Immaculate Conception. Whether the society as organized was the parish, or the parish means the unorganized congregation, the beneficial use of the fund belonged to the parish, and, in the absence of specific evidence to the contrary, the presumption is the funds were given in view of the law of the state (*MacDonald* v. *Railway*, 71 N. H. 448, 450), which vests in the Bishop of Manchester the legal title to the property of a Roman Catholic parish.   There was no error in the decree declaring that the fund in dispute is the property in trust of the Roman Catholic Bishop of Manchester.   But the settling of the legal title in the bishop does not settle the terms of the trust.   He will hold

the fund, if he takes it, upon the same trusts as the money was held by the committees collecting it or the St. Cassimer Society, those imposed thereon by the subscribers to, or donors of, the fund.

It is claimed the money, or portions of it, was given upon the trust or condition that it was to be used only for the purchase of a church building, the title to which, when paid for, should be in the name of the St. Cassimer Roman Catholic Society of Nashua. If this be so, it is apparent that neither the committee, the society nor the bishop are authorized to use the money for another purpose. The absence of such limitation of the trust is not determined by a decree in a proceeding to which only claimants of the legal title are parties. The decree ordered would not protect the rightful holder of the legal title in a proceeding to secure due execution of the trust. It seems clear from the case that the bishop would not, and could not, accept the trusteeship of a fund which he was required to administer by the purchase of a church building the title to which should be in a Catholic society instead of in the Bishop of Manchester as a corporation. The present controversy is a regrettable one and apparently useless, since the property, money or a building, is charged with the same trust whoever holds the legal title. But having been entered upon it should now be ended. If all the donors of the fund are made parties and the attorney-general is joined in behalf of the public (*Rolfe and Rumford Asylum* v. *Lefebre*, 69 N. H. 238, 240), after hearing upon such notice as may be ordered, a decree can be made which will finally determine the disposition of any portion of the fund which it may be found was donated for a purpose which cannot be carried out. The question is, not what the plaintiffs and most of the members of the society understood, but what did those who gave intend.

The plaintiffs sue as members of the Lithuanian St. Cassimer Roman Catholic Society of Nashua to enforce a right of the association. To such a proceeding the association is a necessary party. *Kidd* v. *Traction Co.*, 72 N. H. 273, 286. There should be notice to, or an appearance for, the society.

*Case discharged.*

All concurred.